David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 North Tatum Boulevard, Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff Jesse Meyer, on his own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE MEYER, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br><br>Defendants. | No. 11-cv-01008-AJB-RBB<br><br>Hon. Anthony J. Battaglia<br><br>**PLAINTIFF JESSE MEYER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION AND LIMITED CLASS CERTIFICATION**<br><br>Date:      June 23, 2011<br>Time:      1:30 p.m.<br>Location:  Courtroom 12, Second Floor<br>               Edward J. Schwartz Courthouse<br>               940 Front Street<br>               San Diego, California 92101-8900 |

1

# TABLE OF CONTENTS

2

I.   MEYER SATISFIES THE STANDARDS FOR A PRELIMINARY INJUNCTION
     UNDER RULE 65 ................................................................................... 1

     A.   Evidence Supports Meyer Is Likely To Succeed In Establishing the Elements of
          His TCPA Claim ............................................................................. 2
          1.   PRA Called Meyer's Cellular Telephone .......................... 3
          2.   PRA Did Not Have Permission to Call Meyer or Any of the Other
               Injunctive Class Members ................................................ 3
          3.   PRA Called Meyer and the Other Injunctive Class Members With an
               Automatic Telephone Dialing System ................................ 6
     B.   Without the Proposed Injunction, Meyer and the Other Injunctive Class Members
          Will Suffer Irreparable Harm ............................................................ 8
          1.   PRA's Persistently Violates the TCPA on an Ongoing Basis ............... 8
          2.   PRA's TCPA Violations Cause Irreparable Harm ......................... 9
          3.   Money Damages Are Not an Adequate Remedy ....................... 11
     C.   The Balance of Harms Favors the Proposed Injunction ...................... 13
     D.   The Public Interest Favors the Proposed Injunction ........................ 14
     E.   The Court Should Order a Nominal Bond ...................................... 14

II.  MEYER SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER
     RULE 23(B)(2) ................................................................................. 15

     A.   The Class Meets the Requirements of Rule 23(a) ........................... 16
          1.   The Injunctive Class Satisfies the Numerosity Requirement ............ 17
          2.   Common Legal and Factual Issues Pertain to Both Meyer and the
               Injunctive Class .......................................................... 19
          3.   Meyer and His Counsel Are Adequate Representatives For the Class ..... 20
     B.   The Class Meets the Requirements of Rule 23(b) .......................... 21

III. CONCLUSION ................................................................................. 22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) .................................................................1

*Am. Fed'n of Gov't Employees, Local 1616 v. Thornburgh*,
   713 F.Supp.359 (N.D. Cal. 1989) ...........................................................10

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................20

*Arnold v. United Artists Theatre Circuit, Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994) ...........................................................16

*Barahona-Gomez v. Reno*,
   167 F.3d 1228 (9th Cir. 1999) ...............................................................15

*Bateman v. American Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) .................................................................11

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...........................................................16, 21

*Boyce's Ex'rs v. Grundy*,
   28 U.S. 210 (1830).................................................................................11

*Cadence Design Sys., Inc. v. Avant! Corp.*,
   125 F.3d 824 (9th Cir. 1997) .................................................................13

*Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*,
   545 F. Supp. 2d 768 (N.D. Ill. 2008) .....................................................12

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council*,
   467 U.S. 837 (1984).................................................................................5

*Davis v. Astrue*,
   250 F.R.D. 476 (N.D. Cal. 2008).......................................................17, 18

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) ............................................................19, 20

*DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*,
   176 Cal.App.4th 697 (2009) ....................................................................9

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
     92 F.3d 1486 (9th Cir. 1996) ................................................................15

*eBay, Inc. v. Bidder's Edge, Inc.*,
     100 F.Supp.2d 1058 (N.D. Cal. 2000) ..................................................13

*Ft. Funston Dog Walkers v. Babbitt*,
     96 F.Supp.2d 1021 (N.D. Cal. 2000) ....................................................10

*Gay v. Waiters' & Dairy Lunchmen's Union*,
     549 F.2d 1330 (9th Cir. 1977) ..............................................................18

*Gerling Global Reinsurance Corp. of Am. v. Low*,
     240 F.3d 739 (9th Cir. 2001) ..................................................................2

*Gilder v. PGA Tour, Inc.*,
     936 F.2d 417 (9th Cir. 1991) ................................................................10

*Haley v. Medtronic, Inc.*,
     169 F.R.D. 643 (C.D. Cal. 1996) ..........................................................17

*Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ..............................................................20

*Hicks v. Client Servs., Inc.*,
     No. 07-61822, 2009 WL 2365637 (S.D. Fla. June 9, 2009)....................8

*Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*,
     938 F. Supp. 612 (C.D. Cal. 1996) ......................................................10

*Horn v. Assoc'd Wholesale Grocers, Inc.*,
     555 F.2d 270 (10th Cir. 1977) ..............................................................18

*In re Activision Sec. Litig.*,
     621 F. Supp. 415 (N.D. Cal. 1985) ......................................................16

*In re Data Access Systems Sec. Litig.*,
     103 F.R.D. 130 (D.N.J. 1984)................................................................21

*In re Estate of Ferdinand Marcos, Human Rights Litig.*,
     25 F.3d 1467 (9th Cir. 1994) ................................................................11

*In re Hanford Nuclear Reservation Litig.*,
     292 F.3d 1124 (9th Cir. 2002) ..............................................................16

*Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,
     572 F.3d 644 (9th Cir. 2009) . No........................................................14

*J2 Global Commc'ns, Inc. v. Blue Jay Inc.*,
   No. 08-4254, 2009 WL 4572726 (N.D. Cal. Dec. 1, 2009)......................................8

*Jordan v. Los Angeles County*,
   669 F.2d 1311 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)...................18

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ..........................................................14

*Justin v. City of Los Angeles*,
   No. 00-12352, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000)............................14, 15

*Kaufman v. ACS Sys., Inc.*,
   110 Cal.App.4th 886 (2003) ..........................................................12

*Lake Charles Rice Milling Co. v. Pac. Rice Growers' Ass'n*,
   295 F. 246 (9th Cir. 1924) ...........................................................11

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   No. 07-03952, 2010 WL 5598337 (N.D. Cal. Mar. 19, 2010) ...............................10

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F.Supp. 2d 1197 (C.D. Cal. 2007) ("*MGM*").........................................10

*Michaels v. Internet Entm't Group, Inc.*,
   5 F.Supp.2d 823 (C.D. Cal.1998) ...................................................10, 12

*Minnesota ex rel. Hatch v. Sunbelt Commc'ns. & Mktg.*,
   282 F.Supp.2d 976 (D. Minn. 2002)....................................................13

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ..........................................................20

*Nat'l Ass'n of Radiation Survivors v. Walters*,
   111 F.R.D. 595 (N.D. Cal. 1986)........................................................18

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   422 F.3d 782 (9th Cir. 2005) ...........................................................2

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) ......................................................17

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
   40 F.3d 1007 (9th Cir. 1994) ..........................................................12

*O'Connor v. Boeing N. Am., Inc.*,
   180 F.R.D. 359 (C.D. Cal. 1997) ("*O'Connor I*") .........................................19

*O'Connor v. Boeing N. Am., Inc.,*
    184 F.R.D. 311 (C.D. Cal. 1998) ("*O'Connor II*").............................................17

*Penzer v. Transportation Ins. Co.,*
    545 F.3d 1303 (11th Cir. 2008) ...............................................................12

*Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists,*
    422 F.3d 949 (9th Cir. 2005) ...................................................................11

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.,*
    944 F.2d 597 (9th Cir. 1991) ...................................................................10

*Rivera v. Anaya,*
    726 F.2d 564 (9th Cir. 1984) ...................................................................12

*Rodgers v. United States,*
    158 F. Supp. 670 (S.D. Cal. 1958) ...........................................................11

*Saga Int'l, Inc. v. John D. Brush & Co., Inc.,*
    984 F. Supp. 1283 (C.D. Cal. 1997) ..........................................................3

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) .............................................................4, 6, 8, 9

*Save Our Sonoran, Inc. v. Flowers,*
    408 F.3d 1113 (9th Cir. 2005) ..............................................................1, 14

*Sengenberger v. Credit Control Servs., Inc.,*
    No. 09-2796, 2010 WL 1791270 (N.D. Ill. May 5, 2010)...........................5, 19

*Smith v. Univ. of Wa. Law Sch.,*
    2 F. Supp. 2d 1324 (W.D. Wash. 1998)......................................................20

*Soc'y for Individual Rights, Inc. v. Hampton,*
    528 F.2d 905 (9th Cir. 1975) ...................................................................15

*Stone v. Travelers Corp.,*
    58 F.3d 434 (9th Cir. 1995) ...................................................................12

*Sweet v. Pfizer,*
    232 F.R.D. 360 (C.D. Cal. 2005) .............................................................18

*Tovar v. Midland Credit Mgmt.,*
    No. 10-2600, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011).........................6, 8, 19

*United States v. Bluitt,*
    815 F.Supp. 1314 (N.D. Cal. 1992) ..........................................................11

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...............................................................16

*Walker v. Pierce*,
    665 F. Supp. 831 (N.D. Cal. 1987) ......................................................14

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .......................................................11, 21

*Williams v. San Francisco Unified School Dist.*,
    340 F. Supp. 438 (N.D. Cal. 1972) ........................................................2

*Wind v. Herbert*,
    186 Cal.App.2d 276, 285 (1960) ............................................................9

*Xiufang Situ v. Leavitt*,
    240 F.R.D. 551 (N.D. Cal. 2007)....................................................19, 20

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) ...............................................................15

**STATUTES**

47 U.S.C. § 227(a)(1)................................................................................2, 6, 7

47 U.S.C. § 227(b)................................................................................1, 2, 12

47 U.S.C. § 227(b)(1)......................................................................................3, 8

47 U.S.C. § 227(b)(1)(A)(iii)..................................................................2, 8, 19

47 U.S.C. § 227(b)(3)....................................................................2, 11, 12

Fed. R. Civ. P. 23 ....................................................................................... passim

Fed. R. Civ. P. 65 ...................................................................................1, 2, 14

**OTHER AUTHORITIES**

47 CFR § 64.1200 (2011) ...................................................................................3

18 FCC Rcd. 14014, 2003 WL 21517853 (July 3, 2003), *available at*
    http://hraunfoss.fcc.gov/ ........................................................................7

23 FCC Rcd. 559, 2008 WL 65485 (Jan. 4, 2008), *available at*
    http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf ("*ACA Declaratory Ruling*") ...................................................... passim

*ACA Declaratory Ruling*, ¶ 10, 23 FCC Rcd. at 565, 2008 WL 65485 at *3 ..................................5

7AA Charles Alan Wright, Arthur R. Miller, et al, Federal Practice & Procedure § 1790
(3d ed. 2010) ............................................................................................................16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991, 2003 Report and Order,*
CG Docket No. 02-278, FCC 03-153 ......................................................................7

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991, Request of ACA International for Clarification and
Declaratory Ruling,*
CG Docket No. 02-278, FCC Docket No. 07-232.......................................2, 4, 7, 14

Plaintiff Jesse Meyer's ("Meyer") hereby submits his Memorandum of Points and Authorities in support of his Motion for Preliminary Injunction and Limited Class Certification. Meyer seeks an order from the Court that restrains Defendant Portfolio Recovery Associates, LLC ("PRA") from violating the Telecommunications Privacy Act ("TCPA") by using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with a California area code, which numbers PRA obtained via skip-tracing. Meyer also seeks certification for the limited purpose of effectuating the foregoing order of a class of all persons using a cellular telephone number which (1) PRA did not obtain either from a creditor or from the Injunctive Class member; and (2) has a California area-code; or (3) where PRA's records identify the Injunctive Class member as residing in California ("Injunctive Class").

## I.   MEYER SATISFIES THE STANDARDS FOR A PRELIMINARY INJUNCTION UNDER RULE 65

The evidence cited below presents a sufficient basis to issue an order restraining PRA from further violations of the TCPA. The Ninth Circuit has provided two tests applicable to all motions under Federal Rule 65. The traditional criteria are 1) likelihood of success on the merits, 2) risk of irreparable injury without a preliminary injunction, 3) a balance of hardships favoring the  movant, and 4) advancement of the public interest. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Alternatively, the movant may demonstrate "*either* a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id*. (emphasis in original, citations omitted). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id*. Assuming a likelihood of success and the public interest favor the plaintiff, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Meyer demonstrates how this case and this Motion satisfy each of the *Save Our Sonoran* elements below. Given the evidence supporting this Motion, the onus shifts to PRA to produce

contrary evidence to justify the denial of the proposed preliminary injunction.

### A. Evidence Supports Meyer Is Likely To Succeed In Establishing the Elements of His TCPA Claim

With respect to the likelihood of prevailing, Meyer presents sufficient evidence to support his claims. Without countervailing evidence from PRA, this Motion should not be denied on that basis. The initial ruling on a motion for preliminary injunction is reviewed for abuse of discretion, which arises if the ruling is based "on a clearly erroneous assessment of the evidence." *Gerling Global Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 743 (9th Cir. 2001). An assessment of the evidence is "clearly erroneous" where "the record contains no evidence to support it[.]" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005) (citing *Oregon Natural Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995)). Even where it is "uncertain whether plaintiff will prevail at the trial on the merits," a movant for preliminary injunction "need not prove its case with absolute certainty prior to the trial in order to succeed in its motion for a preliminary injunction." *Williams v. San Francisco Unified School Dist.*, 340 F. Supp. 438, 450 (N.D. Cal. 1972) (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) for proposition that "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation").

The three elements needed to state a TCPA claim are (1) the defendant's call to a cellular telephone number (2) using an automatic telephone dialing system, (3) without the recipient's express prior consent. The TCPA provides a private right of action for violations of 47 U.S.C. § 227(b) or the "regulations prescribed under" 47 U.S.C. § 227(b) "to enjoin such violation," to recover actual damages or statutory damages of $500, or both. 47 U.S.C. § 227(b)(3). PRA's violation arises under 47 U.S.C. § 227(b)(1)(A)(iii):

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the <u>prior express consent of the called party</u>) using any <u>automatic telephone dialing system</u> . . .
> (iii) to any telephone number assigned to a paging service, <u>cellular telephone service</u>, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . .

---

47 U.S.C. § 227(b)(1) (emphasis added). *See also* 47 CFR § 64.1200 (2011). Below, Meyer cites evidence demonstrating the three elements needed to state his TCPA claim: (1) PRA called Meyer's cellular telephone number (2) using an automatic telephone dialing system ("ATDS"), (3) without Meyer's express prior consent.

### 1.      PRA Called Meyer's Cellular Telephone

The first element of Meyer's TCPA claim is trivial to demonstrate. Meyer has a cellular telephone which receives service from AT&T Mobility, LLC. (Meyer Decl. ¶3.) PRA called Meyer's cellular telephone on September 1, 2010, November 4, 2010, December 14, 2010, and January 4, 2011. (*Id*. ¶¶4-7.) PRA has admitted to making these calls. (Preston Decl. ¶4.)

### 2.      PRA Did Not Have Permission to Call Meyer or Any of the Other Injunctive Class Members

**Meyer Did Not Authorize PRA to Call His Telephone Number:** Meyer never provided his cellular telephone number to PRA or authorized PRA to call his cellular telephone number. Likewise, Meyer did not authorize any of the creditors whose accounts PRA seeks to collect to call his cellular telephone number. (*Id*. ¶3.) These accounts even appear to pre-date when Meyer obtained his cellular telephone number (October 23, 2003). (*Id*. ¶¶2-3.) Moreover, in the November 4, 2010, December 14, 2010, and January 4, 2011 calls, Meyer repeatedly told PRA's representatives that PRA was calling a cellular telephone, and that PRA was not authorized to call him. (*Id*. ¶¶5-7.) Despite Meyer's express directions, PRA continued to call Meyer's cellular telephone. (*Ibid*.)

**PRA Regularly Calls Cellular Telephones Which It Obtains Through Skip-Tracing:** Meyer's experience is not an isolated event. From PRA's securities filings, it is clear that obtaining cellular telephone numbers via skip-tracing is a regular (even automated) part of PRA's business:

> If a collector is unable to establish contact with a customer . . . , the collector must undertake skip tracing procedures to develop important account information. **Skip tracing is the process of developing new phone** . . . **information on a customer**, or verifying the accuracy of such information. Each collector does his or her own skip tracing using a number of computer applications available at his or her workstation, a process which is significantly supplemented by a series of automated skip tracing procedures implemented by us on a regular basis.

(Preston Decl. ¶2) (emphasis added). In discovery, PRA has provided Meyer a list of (1) 613,797 cellular telephone numbers with a California area code; (2) which PRA obtained via skip-tracing; and (3) which PRA called between January 1, 2007 to March 31, 2011. (*Id.* ¶3.)

Meyer's own experience confirms these skip-tracing practices. Most notably, Meyer's own number is included in the list cited above: PRA obtained Meyer's cellular telephone number through skip-tracing. (*Id.*) Indeed, during PRA's November 4, 2010 call to Meyer, its representative indicated that PRA "had ways of getting numbers." (Meyer Decl. ¶5.) Just as PRA had no permission to call Meyer's cellular telephone, PRA did not obtain permission to call any of the other 613,796 cellular telephone numbers cited above when it gathered those numbers via skip-tracing.

**PRA Does Not Have "Prior Express Consent" to Call Skip-Traced Numbers:** The phrase "prior express consent" has not been defined in the TCPA. However, the FCC has specifically examined and definitively stated how the TCPA's prior express consent exception applies to debt collectors:

> [C]reditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt. **We note, however, that where the subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers.**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, FCC Docket No. 07-232, ¶ 14, 23 FCC Rcd. 559, 567, 2008 WL 65485, *4 (Jan. 4, 2008), *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf ("*ACA Declaratory Ruling*"). In other words, the FCC has held that debt collectors cannot call cellular telephones with an automatic telephone dialing system *unless the user of the telephone number gave his or her number to the original creditor*. "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) (citing 47 U.S.C. § 227(b)(2)). Hence, the *ACA*

*Declaratory Ruling*'s construction of phrase "prior express consent" "has the force of law and is therefore entitled to *Chevron* deference" where it "is not defined by the TCPA" where the "FCC's interpretation of the statute is reasonable." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843-44 (1984)).

PRA obtained Meyer's number through skip-tracing. (*See* Preston Decl. ¶3.) PRA did not have prior express consent from Meyer to call his cellular telephone number. Meyer did not provide his cellular telephone number to PRA directly. (Meyer Decl. ¶2.) Likewise, Meyer did not provide his telephone number to any of the alleged creditors associated with PRA: Meyer obtained his telephone number in October 23, 2003, well after he stopped dealing with Computer Learning Center in 1998 or 1999. (*Id.* ¶¶2-3.)

Likewise, *PRA plainly did not obtain consent from any of the other 613,796 cellular telephone numbers cited above from original creditors, because PRA had to resort to skip-tracing in order to obtain those telephone numbers.* (See Preston Decl. ¶3.) PRA has expressly admitted that it "has called more than 400 California residents using a telephone number that PRA did not obtain either from a creditor or from the person that uses that cellular telephone number." (*Id.* ¶4.) This admission leaves no doubt that PRA did not have consent to call these numbers; "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *ACA Declaratory Ruling*, ¶ 10, 23 FCC Rcd. at 565, 2008 WL 65485 at *3.

**Finally, PRA Bears the Burden of Proving Prior Express Consent:** As the defendant, PRA "bears the burden of proof with respect to 'prior express consent.'" *Sengenberger v. Credit Control Servs., Inc.*, No. 09-2796, 2010 WL 1791270, *3 (N.D. Ill. May 5, 2010) (citing *ACA Declaratory Ruling* and *United States v. First City Nat. Bank of Houston*, 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) for proposition that "where one claims the benefit of an exception to the prohibition of a statute, that party carries the burden of proof"). This Court has come to the same conclusion. "With regard to prior consent, the FCC ruled that it is the creditor's burden to show the wireless number was provided by the consumer to the creditor

during the transaction that resulted in the debt owed." *Tovar v. Midland Credit Mgmt.*, No. 10-2600, 2011 WL 1431988, *3 (S.D. Cal. Apr. 13, 2011). It is PRA's burden to demonstrate that it had prior express consent to call Meyer and the other Injunctive Class members.

### 3. PRA Called Meyer and the Other Injunctive Class Members With an Automatic Telephone Dialing System

**PRA Calls Meyer and the Other Injunctive Class Members with Avaya Proactive Contact Dialer:** PRA indicated in discovery responses that it called Meyer using an Avaya Proactive Contact Dialer. (Preston Decl. ¶3.) It is equally clear that PRA calls other Injunctive Class Members with its Avaya Proactive Contact Dialers. Under a heading titled "Predictive Dialer Technology," PRA's securities filings indicate that PRA uses the Avaya Proactive Contact Dialer to call alleged debtors, and state outright that "[i]n the process of collecting accounts, [PRA] use[s] ***automated predictive dialers*** . . . to communicate with our consumers." (*Id*. ¶2) (emphasis added).

**The Avaya Proactive Contact Dialer Is an ATDS:** The TCPA expressly defines the phrase "automatic telephone dialing system":

> The term "automatic telephone dialing system" means equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

47 U.S.C. § 227(a)(1). The Ninth Circuit Court of Appeals has found that this statutory language focuses the factual analysis on whether equipment has the *capacity* to dial random or sequential numbers (not whether equipment is actually used that way):

> When evaluating the issue of whether equipment is an ATDS, the [TCPA's] clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Satterfield*, 569 F.3d at 951 (emphasis in the original). Given *Satterfield*'s statutory analysis, there is little room to doubt that PRA's Avaya Proactive Contact Dialer constitutes an ATDS under the TCPA. PRA has admitted that it did not manually dial Meyer's cellular telephone number, and that the device used to call Meyer "*is capable of storing more than two telephone numbers.*" (Preston Decl. ¶4) (emphasis added). Further, Avaya Proactive Contact Dialers are

capable of dialing computer-generated lists of telephone numbers. (*Id*. ¶5.) As such lists can contain random or sequential lists of telephone numbers, the Avaya Proactive Contact Dialers constitute ATDSs under 47 U.S.C. § 227(a)(1).

**FCC's Rulings Reinforce This Conclusion:** The FCC's rulings eliminate any remaining doubts that the Avaya Proactive Contact Dialer constitutes an ATDS. The FCC has expressly and repeatedly construed the phrase automatic telephone dialing system to include "predictive dialer[s]" that use pre-defined lists of numbers:

> The statutory definition [of an ATDS] contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have the "*capacity* to store or produce telephone numbers (emphasis added)...." It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. [However,] the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. **The basic function of such equipment, however, has not changed–the *capacity* to dial numbers without human intervention.** We fully expect automated dialing technology to continue to develop. . . . [T]he purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. **Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress.**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 132-33, 18 FCC Rcd. 14014, 14091-93, 2003 WL 21517853, *46 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/ edocs_public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*") (italics in original; bold supplied). The debt collection industry subsequently asked the FCC to reconsider this ruling. In 2008, the FCC reaffirmed that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *ACA Declaratory Ruling,* FCC Docket No. 07-232, ¶ 12, 23 FCC Rcd. at 566, 2008 WL 65485, at *4. The FCC further stated that permitting calls to cellular telephone numbers

> when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibit[ing the same] when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls [and that *the debt collection industry failed to raise any*] new information about

*predictive dialers that warrants reconsideration of these findings.*

*Id.*, ¶ 14, 23 FCC Rcd. at p. 566-67, 2008 WL 65485, at *4 (emphasis added). This Court has neatly summarized the FCC's rulings: "The FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors." *Tovar*, 2011 WL 1431988, at *3. *See also Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, *5 (S.D. Fla. June 9, 2009) (a device "which calls a set of numbers without human intervention, falls under the FCC definition of automatic telephone dialing systems"). Given that *Satterfield* independently found the TCPA's language to focus on the capabilities of predictive dialers, the deference owed to the FCC's interpretations of the TCPA, and the FCC's repeated determination that predictive dialers are ATDSs, the statement in PRA's securities filings that "[i]n the process of collecting accounts, [PRA] use[s] ***automated predictive dialers*** . . . . to communicate with our consumers" necessarily leads to the conclusion that PRA calls Meyer and the other Injunctive Class members with an ATDS. (Preston Decl. ¶2) (emphasis added).

## B. Without the Proposed Injunction, Meyer and the Other Injunctive Class Members Will Suffer Irreparable Harm

The proposed injunction restrains prospective violations of the TCPA by prohibiting PRA from using the Avaya Proactive Contact Dialer to make calls to cellular telephone numbers with a California area code, where PRA obtained such cellular telephone numbers from skip-tracing. As set forth above, those calls violate 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA specifically authorizes actions to restrain violations of 47 U.S.C. § 227(b)(1). *See J2 Global Commc'ns, Inc. v. Blue Jay Inc.*, No. 08-4254, 2009 WL 4572726, at *8 (N.D. Cal. Dec. 1, 2009) (citing 47 U.S.C. § 227(b)(3)). "Because injunctions are authorized by statute, irreparable injury need not be shown." *Id.* (quoting *United States v. Laerdal Mfg. Co.*, 73 F.3d 852, 855 (9th Cir.1995) for proposition that "a statutory injunction may be imposed when a violation of a statute has been or is about to be committed").

### 1. PRA's Persistently Violates the TCPA on an Ongoing Basis

Of course, Meyer does not rest on the TCPA's statutory authorization of injunctive relief. PRA's ongoing TCPA violations pose irreparable harm to Meyer and the other Injunctive Class members. Meyer's own experience that PRA does not stop calling cellular telephone numbers,

even when it is told to stop. Meyer informed PRA that it was calling a cellular telephone during its November 4, 2010, December 14, 2010, and January 4, 2011 calls, and instructed PRA to stop calling. (Meyer Decl. ¶¶5-7.) Despite Meyer's express instructions to the contrary, PRA continued to call. (*Id.*) Nor has this lawsuit stopped PRA from continuing to violate the TCPA. PRA has continued to call other skip-traced cellular telephone numbers on a massive scale, at least through March 31, 2011. (Preston Decl. ¶3.) Further, PRA's policy is to continue calling cellular telephone numbers until and unless it receives a *written instruction* not to do so. (*Id.* ¶5.) This policy is plainly inconsistent with the TCPA. Indeed, PRA's policies, securities filings, and its involvement with the relevant FCC's rule-making strongly suggest that PRA knows its conduct may fall within the TCPA, but has simply decided to risk violating the TCPA in order to keeping dunning consumers on their cellular telephones. (*See id.* ¶¶2, 5.)

### 2.    PRA's TCPA Violations Cause Irreparable Harm

PRA's TCPA violations harm the privacy of the recipients of its unauthorized calls. Congress enacted the TCPA "to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Satterfield*, 569 F.3d at 954 (quoting S. Rep. No. 102-178, at 1 (1991)). "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy." *Id.* Violations of the TCPA are an invasion of privacy.

PRA's invasion of privacy constitutes irreparable harm. Irreparable harm "means more than harm that cannot be repaired. Irreparable harm includes 'that species of damages, *whether great or small, that ought not to be submitted to on the one hand or inflicted on the other*.'" *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal.App.4th 697, 721 (2009) (emphasis in original, quoting *Wind v. Herbert*, 186 Cal.App.2d 276, 285 (1960)).

> The argument that there is no irreparable damage, would not be so often used by defendants if they would take the trouble to observe that the word irreparable is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs which occasion damages estimable only by conjecture and not by any accurate standard.

*Id.* at 721-22 (punctuation omitted, quoting *Wind*, 186 Cal.App.2d at 285). The Ninth Circuit recognizes that "intangible injuries . . . qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 519-20 (9th Cir. 1984)). Invasions of privacy, in particular, have been held to constitute irreparable harm. *See Michaels v. Internet Entm't Group, Inc.*, 5 F.Supp.2d 823, 842 (C.D. Cal.1998) (injury from invasion of privacy was to plaintiff's "human dignity and peace of mind"; "such injuries are to some extent irreparable"); *Am. Fed'n of Gov't Employees, Local 1616 v. Thornburgh*, 713 F.Supp.359, 366 (N.D. Cal. 1989) ("significant possibility of irreparable injury by . . . infringement of individual privacy").[1] The fact that such injuries do not create clearly defined financial losses does not mean that is there no irreparable harm. On the contrary, as discussed below, where "damages would be difficult to valuate[, they] thus constitute[] possible irreparable harm." *Rent-A-Center*, 944 F.2d at 603. *See also Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991).

PRA's conduct also impairs the rights Meyer has to exclude PRA from using his cellular telephone under the TCPA. Copyright and trademark cases found that injunctive relief is appropriate where conduct threatens the plaintiff's right to exclude others from using their property. See *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp. 2d 1197, 1216-17 (C.D. Cal. 2007) ("*MGM*") (injunction against copyright infringement appropriate where it "has the actual effect of irreparably harming a plaintiff's right to control the use of his/her copyrighted material"). *See also Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. 07-03952, 2010 WL 5598337, *18  (N.D. Cal. Mar. 19, 2010) (injunction granted because defendant's actions impaired plaintiff's "ability to maintain strict controls over production, distribution, and marketing of their products"; because harm from loss of control was "difficult to measure or quantify," it was "irreparable"); *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 615, 616 (C.D. Cal. 1996) ("significant threat of irreparable

---

[1]    Likewise, similar intangible injuries have also been found to constitute irreparable harm. *See, e.g.*, *Ft. Funston Dog Walkers v. Babbitt*, 96 F.Supp.2d 1021, 1040 (N.D. Cal. 2000) (imminent park closure threatened plaintiffs' "continued access to recreation that improves the quality of their lives"; harm posed by closure was "substantial and irreparable").

harm" where continued trademark infringement would deprive the trademark owner of being "able to control its reputation"). PRA does not have the right to call Meyer's cellular telephone; an injunction is necessary to secure that right.

### 3.        Money Damages Are Not an Adequate Remedy

Certainly, the TCPA authorizes recovery of damages equal to either "actual monetary loss" or statutory damages of $500 per violation. 47 U.S.C. § 227(b)(3). The TCPA's damages remedy does not preclude injunctive relief. "[T]he 'mere existence' of [a remedy for damages] is not sufficient to warrant denial of equitable relief: 'In order to preclude the granting of relief by the equity court, an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final.'" *United States v. Bluitt*, 815 F.Supp. 1314, 1317-18 (N.D. Cal. 1992) (quoting *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991), punctuation omitted).[2]

**Actual Damages Are Difficult to Calculate:** Damages are an inadequate remedy where the "nature of the plaintiff's loss [makes] damages very difficult to calculate." *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1479 (9th Cir. 1994) (citation omitted). *See also Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998) ("no legal remedies available that would adequately compensate [plaintiffs where] [t]here is no way to calculate the value of [violation of constitutional rights] or the damages that result from erroneous deportation"). Statutory damages often reflect Congress's decision to compensate persons injured by a statutory violation, even where proving actual damages from such violation may be difficult. "Statutory damages are meant to compensate victims when actual loss is hard to prove." *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 422 F.3d 949, 963 n.7 (9th Cir. 2005) (citing 18 U.S.C. § 248(b)).[3] While "monetary damages are available for

---

[2]        "It is not enough that there is a remedy at law: it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Boyce's Ex'rs v. Grundy*, 28 U.S. 210, 214 (1830) (quoted by *Lake Charles Rice Milling Co. v. Pac. Rice Growers' Ass'n*, 295 F. 246, 249 (9th Cir. 1924); *Rodgers v. United States*, 158 F. Supp.  670, 679 (S.D. Cal. 1958)).

[3]        "Congress expressly created a statutory damages scheme that intended to compensate individuals for actual or potential damages resulting from [Fair Credit Reporting Act] violations, without requiring individuals to prove actual harm." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010). "Actual damages to Stone may be difficult to

[injuries from invasion of privacy], they are difficult to quantify" and therefore support injunctive relief. *Michaels*, 5 F.Supp.2d at 842. The TCPA's statutory damage provision reflects the fact that proving actual monetary losses from the invasion of privacy caused by a TCPA violation may be difficult. *See Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (TCPA statutory damages are intended to "liquidate uncertain actual damages and to encourage victims to bring suit," citation omitted); *Kaufman v. ACS Sys., Inc.*, 110 Cal.App.4th 886, 925 (2003) ("Congress established a penalty [in 47 U.S.C. § 227(b)(3)] designed not only to compensate for the actual damages and unquantifiable harm, but also to deter the offensive conduct," citation omitted, emphasis added).[4] Injunctive relief is appropriate because it is difficult to measure the Injunctive Class's actual damages.

**Statutory Damages Have Failed to Deter PRA's Privacy Invasions:** Damages are an inadequate remedy because PRA is a persistent tortfeasor; the risk of statutory damages has merely served as the price of a license to violate the TCPA. Statutory damages provisions can "serve completely different purposes than actual damages," such as "deter[ring] future violations." *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994). The TCPA's damages were plainly intended to secure consumer's privacy and property interest in their cellular telephones by deterring violations. *See Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 777-78 (N.D. Ill. 2008) (TCPA's "$500 remedy serves the dual purpose of deterring unwanted solicitation while, at the same time, encouraging plaintiffs to bring suit"); *Kaufman*, 110 Cal.App.4th at 925 (47 U.S.C. § 227(b)(3) designed "to deter the offensive conduct," citation omitted, emphasis added). The most reasonable inference

---

prove, a fact justifying [statutory damages under ERISA]." *Stone v. Travelers Corp.*, 58 F.3d 434, 438 (9th Cir. 1995). "Congress was aware of the difficulty a plaintiff might encounter in measuring damages suffered under [Federal Farm Labor Contractor Registration Act] and provided a measure of relief in such instances by permitting the award of actual or statutory damages." *Rivera v. Anaya*, 726 F.2d 564, 569 (9th Cir. 1984).

[4]    Another provision of the 47 U.S.C. § 227(b) prohibits unauthorized faxes. It has been held that "the costs of paper and ink or toner, [and] other costs associated with the receipt of unwanted faxes, such as wasted time and interference with the plaintiff's fax machine, are difficult to quantify." *Centerline Equipment Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 777-78 (N.D. Ill. 2008). PRA's violation of the TCPA poses similar unquantifiable losses, like loss of cellular airtime, wasted time, and interference with the Injunctive Class's cellular telephones.

from PRA's persistent TCPA violations is that PRA is simply not deterred by the prospect of statutory damages. Because statutory damages have failed to achieve deterrence, injunctive relief is necessary.

### C.    The Balance of Harms Favors the Proposed Injunction

The injunction is narrowly drafted to require PRA to refrain from doing only what the TCPA prohibits: calling cellular telephones with an ATDS where PRA does not have prior express consent to do so. As shown above, PRA's contumacy in continuing to make these calls makes it clear that the injunction is the only way to secure the privacy rights of Meyer and the other Injunctive Class members under the TCPA.

Conversely, the profits that PRA derives from violating the TCPA cannot justify denial of the injunction. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to [violate the law], such an argument in defense merits little equitable consideration on an appeal from a preliminary injunction." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (copyright case, citation and punctuation omitted). The general rule is that "a defendant who builds a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if the defendant is forced to respect those property rights." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069 (N.D. Cal. 2000). The general rule holds true in the context of a TCPA injunction. Defendants' contention that a preliminary injunction will "effectively putting [them] out of business" has been rejected; "[t]he plea to remain in business while blatantly violating a federal statute is not persuasive . . . [there is] no justification for why [defendants] are entitled to profit in the interim, unencumbered by competition that is now undoubtedly suppressed due to the existence of a clear federal statute prohibiting their business practices." *Minnesota ex rel. Hatch v. Sunbelt Commc'ns. & Mktg.*, 282 F.Supp.2d 976, 980 (D. Minn. 2002).

### D.    The Public Interest Favors the Proposed Injunction

The public interest factor in the determination to issue a preliminary injunction concerns "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009) (citation omitted). No third parties will be harmed if PRA is prevented from calling consumers' cellular telephones. Indeed, the proposed injunction protects a wide range of consumers from PRA's continuing TCPA violations. Such TCPA violations "were determined by Congress to threaten public safety and inappropriately shift costs to consumers." *ACA Declaratory Ruling,* FCC Docket No. 07-232, ¶ 14, 23 FCC Rcd. at 566, 2008 WL 65485, at *4. Congress found that the TCPA "is necessary to protect the public from automated telephone calls. These calls can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services. [The TCPA is] the minimum necessary to protect the public against the harm caused by the use of these machines." S. Rep. No. 102-178, at 4 (1991)). Likewise, the proposed injunction also benefits PRA's competitors who comply with the TCPA by eliminating unfair and unlawful competition.

### E.    The Court Should Order a Nominal Bond

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary  injunction issues. Fed. R. Civ. P. 65(c). "Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)) (emphasis in original). A district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id. See also Justin v. City of Los Angeles*, No. 00-12352, 2000 WL 1808426, at *2 (C.D. Cal. Dec. 5, 2000) (bonds under Rule 65(c) have "been dispensed with entirely where there was no proof of likelihood of harm to the party enjoined"). Conversely, there is "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." *Save Our Sonoran*, 408 F.3d at 1126. *See also Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987) (waiving bond requirement for

1   class representative). Meyer is a consumer of modest means: he obtained representation on a

2   contingency basis and cannot responsibly devote more than $2,000 towards a bond that will

3   serve to protect his interests and the interests of other recipients of PRA's calls. (Meyer Decl.

4   ¶6.)  Meyer's status as class representative, his inability to absorb the expenses of large

5   commercial enterprises like PRA, the minimal costs of complying with the proposed injunction,

6   and the public interest features of the relief sought all weigh in favor of a minimal bond, or no

7   bond at all. *Cf. Barahona-Gomez*, 167 F.3d at 1237 (affirming district court's discretion to

8   require only nominal bond of $1,000); *Justin*, 2000 WL 1808426, at *13 (where injunction on

9   constitutional claim "pose[d] no risk of pecuniary injury . . . from being restrained and enjoined,"

10  class representative exempted from bond)).

## II.   MEYER SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23(B)(2)

13          Injunctive relief may be "limited to apply only to the individual plaintiffs unless the

14  district judge certifies a class of plaintiffs." *Zepeda v. INS*, 753 F.2d 719, 728 (9th Cir. 1983).

15  Meyer asserts that he is entitled to the proposed injunction under *Easyriders Freedom F.I.G.H.T.*

16  *v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996), which recognized that "an injunction is not

17  necessarily made overbroad by extending benefit or protection to persons other than prevailing

18  parties in the lawsuit – even if it is not a class action . . . " *Id.* at 1501-02. Meyer expressly

19  reserves that argument, but also asserts in the alternative that the Court can and should certify the

20  Injunctive Class for the limited purpose of effectuating the proposed injunction. The Injunctive

21  Class is defined as all persons using a cellular telephone number which (1) PRA did not obtain

22  either from a creditor or from the Injunctive Class member; and (2) has a California area-code; or

23  (3) where PRA's records identify the Injunctive Class member as residing in California.

24          Rule 23 provides the Court with sufficient flexibility to certify the Injunctive Class for a

25  limited purpose: "an action may be brought or maintained as a class action with respect to

26  particular issues." Fed. R. Civ. P. 23(c)(4). Rule 23(c)(4) provides the Court with the power to

27  "to limit the issues in a class action to those parts of a lawsuit which lend themselves to

28  convenient use of the class action motif." *Soc'y for Individual Rights, Inc. v. Hampton*, 528 F.2d

905, 906 (9th Cir. 1975) (punctuation, citation omitted, certification of class only for prospective injunctive relief was proper).[5] *See Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996) (even where "Rule 23 authorizes the district court in appropriate cases to isolate . . . common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues"). For instance, "[a] court may certify a Rule 23(b)(3) class for certain claims, allowing class members to opt out, while creating a non-opt-out Rule 23(b)(1) or (b)(2) class for other claims." Manual for Complex Litigation § 21.24 (4th ed. 2004).

> [Rule 23(c)(4)] is particularly helpful in enabling courts to restructure complex cases to meet the . . . requirements for maintaining a class action. . . . [Rule 23(c)(4)] is designed to give the court maximum flexibility in handling class actions, its proper utilization will allow a Rule 23 action to be adjudicated that otherwise might have had to be dismissed or reduced to a nonrepresentative proceeding because it appears to be unmanageable.

*In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985) (certification on single issue related to liability). *See also In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1139 (9th Cir. 2002) (remanding with recommendation that the trial court consider "[class] certification only for questions of generic causation common to plaintiffs who suffer from the same or a materially similar disease"); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 453 (N.D. Cal. 1994) (certifying class for injunctive and statutory damages, but using Rule 23(c)(4) to exclude certification for damages under different theory that required individualized proof). Under Federal Rule 23(c)(4), the Court can certify a class for the limited purpose sought herein.

### A.    The Class Meets the Requirements of Rule 23(a)

Class certification has a lenient evidentiary standard; "all that is required" to certify a class is "material sufficient to form a reasonable judgment on each requirement" of Rule 23. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Absent such material, "the court may request the parties to supplement the pleadings with sufficient material to allow an informed judgment on each of the Rule's requirements." *Id*. at 901 n.17. In any event, "[a]n extensive evidentiary showing . . . is not required." *Id*. at 901. Meyer has provided sufficient material

---

[5]    "Rule 23(c)(4) . . . authorizes the court . . . to allow a class action to be maintained with respect to particular issues . . . Rule 23(c)(4) gives the court ample power to 'treat common things in common and to distinguish the distinguishable.'" 7AA Charles Alan Wright, Arthur R. Miller, et al, Federal Practice & Procedure § 1790 (3d ed. 2010).

necessary for the Court to make a reasonable judgment in favor of certification of the Class.

Certification of a class under Rule 23 requires numerosity (i.e., "the class is so numerous that joinder of all members is impracticable"); commonality ("questions of law or fact common to the class"), typicality (the class representative's "are typical" of the class's claims), and adequacy (the class representative "will fairly and adequately" protect the class's interests). Fed. R. Civ. P. 23(a). The Class meets each of these elements, as shown below.

Moreover, there is "an implied prerequisite to certification is that the class must be sufficiently definite," so that the class definition is "precise, objective, and presently ascertainable." *Davis v. Astrue*, 250 F.R.D. 476, 484 (N.D. Cal. 2008) (quoting *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05-2320, 2006 WL 2642528, at *3 (N.D. Cal. Sept. 14, 2006); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("*O'Connor II*"), punctuation omitted). Here, members of the Injunctive Class can be readily identified by their cellular telephone numbers or residential addresses within PRA's records. *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) (where defendant maintained records identifying potential class members, "the identity of potential plaintiffs is easily ascertainable such that an identifiable class does exist"). While PRA contends that it cannot determine whether the 613,797 telephone numbers in the list it provided Meyer "belong to California residents, but . . . only that these individuals have a cell phone with a California area code and that the number was obtained through skip tracing," this is sufficient to determine that these individuals are within the Injunctive Class. (Preston Decl. ¶3). It is irrelevant whether PRA can identify the owners of the telephone numbers on the list; the injunction only requires PRA to stop calling those numbers. Moreover, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor II*, 184 F.R.D. at 319 (citation, punctuation omitted).

### 1.    The Injunctive Class Satisfies the Numerosity Requirement

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Negrete v. Allianz Life*

*Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D. Cal. 2006) (citation, punctuation omitted). "As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement." *Davis*, 250 F.R.D. at 485. *See also Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (numerosity could likely be satisfied "solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71").

PRA has provided Meyer a list of (1) 613,797 cellular telephone numbers with a California area code; (2) which PRA obtained via skip-tracing; and (3) which PRA called between January 1, 2007 to March 31, 2011. (Preston Decl. ¶3.) Each of these numbers corresponds to a class member. PRA has also admitted that it "has called more than 400 California residents using a telephone number that PRA did not obtain either from a creditor or from the person that uses that cellular telephone number." (*Id.* ¶4.) This is sufficient basis for a reasonable judgment that the Injunctive Class satisfies the numerosity requirement. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977) (in determining numerosity, "a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings"); *Sweet v. Pfizer*, 232 F.R.D. 360, 366 (C.D. Cal. 2005) ("where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (citation, quotation omitted).

Moreover, numerosity is supported by the limited, injunctive purpose of the certification sought herein. *Jordan,* 669 F.2d at 1319 (claims for "injunctive or declaratory relief" support numerosity). Injunctive relief supports numerosity because the proposed injunction protects, and the Injunctive Class includes, not only people who have received calls from PRA but people who will receive calls from PRA. *Id.* at 3120 ("joinder of unknown individuals is inherently impracticable"); *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 600 (N.D. Cal. 1986) ("where the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met"). *See also Horn v. Assoc'd Wholesale Grocers, Inc.,* 555 F.2d 270, 275-76 (10th Cir. 1977) ("where the relief sought is injunctive and declaratory, even speculative and conclusory representations as to the size of the class are sufficient"). The Injunctive Class satisfies Rule 23(a)(1).

### 2. Common Legal and Factual Issues Pertain to Both Meyer and the Injunctive Class

The commonality and typicality requirements under Rules 23(a)(2) and 23(a)(3) are satisfied because there are sufficient common legal and factual questions as to each Injunctive Class member, including Meyer, to certify the Class.

"Commonality focuses on the relationship of common facts and legal issues among class members." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 599 (9th Cir. 2010). "The commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." *Id.* (citation, punctuation omitted). The TCPA provision at issue in this case, 47 U.S.C. § 227(b)(1)(A)(iii), has three elements: calls (1) from an ATDS (2) to cellular telephone numbers, (3) without the recipient's express prior consent. Each of these elements is amenable to class certification. PRA's records can identify when it has called a cellular telephone number. (*See* Preston Decl. ¶3.) PRA's records can also identify when it obtained a telephone number from skip-tracing, which is tantamount to proving a lack of express consent – as PRA did not obtain such numbers either from a creditor or the recipient on that number. (In any event, PRA "bears the burden of proof with respect to [proving] 'prior express consent.'" *Sengenberger*, 2010 WL 1791270, at *3 (N.D. Ill. May 5, 2010). *See also Tovar*, 2011 WL 1431988, at *3.) Finally, the relevant capabilities of the Avaya Proactive Contact Dialer (or PRA's other predictive dialers) will be the same for each member of the Injunctive Class called. Hence, these common legal and factual issues are more than sufficient to establish commonality. Commonality can be "easily satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted). *See also O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 370 (C.D. Cal. 1997) (sufficient commonality for class certification where relief "turn[s] on questions of law applicable in the same manner to each member of the class") ("*O'Connor I*"). Moreover, commonality does not equate to uniformity – Rule 23(a)(2) tolerates significant differences between class members:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as

is a common core of salient facts coupled with disparate legal remedies within the
class.

*Dukes*, 603 F.3d at 599 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.
1998)). *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (in case seeking injunctive
relief, "individual factual differences among the individual litigants or groups of litigants will not
preclude a finding of commonality"). Any differences between individual Injunctive Class
members do not impair commonality. The Injunctive Class satisfies Rule 23(a)(2).

Because Meyer shares these relevant common factual and legal issues with the other
Injunctive Class members, he also satisfies typicality. Typicality and commonality share many
"underlying issue[s]." *Armstrong*, 275 F.3d at 868. Meyer's claims are "reasonably co-extensive
with those of absent class members; [his claims] need not be substantially identical." *Hanlon*,
150 F.3d at 1020. Typicality only requires "that the unnamed class members have injuries similar
to those of the named plaintiffs and that the injuries result from the same, injurious course of
conduct." *Armstrong*, 275 F.3d at 869. *See also Xiufang Situ*, 240 F.R.D. at 561 ("[t]ypicality
requires that named plaintiffs be members of the class they represent and possess the same
interest and suffer the same injury as class members," citation, punctuation omitted). *Cf. Smith v.
Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("Typicality turns on the
defendant's actions toward the plaintiff class, not particularized defenses against individual class
members."). The Class satisfies Rule 23(a)(3).

### 3. Meyer and His Counsel Are Adequate Representatives For the Class

Lastly, Rule 23(a)(4) requires that Meyer and his counsel fairly and adequately protect
the Injunctive Class's interests. The adequacy test has two elements: (1) are there conflicts
between Meyer or his counsel and the other Injunctive Class members, and (2) will Meyer and
his counsel vigorously prosecute the class action? *See Hanlon*, 150 F.3d at 1020. *See also Molski
v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy "depends on the qualifications of counsel
for the representatives, an absence of antagonism, a sharing of interests between representatives
and absentees, and the unlikelihood that the suit is collusive"). Meyer's counsel is well qualified
and highly experienced in class action litigation. (Preston Decl. ¶6.) Counsel will advance the
costs of litigation and will represent the Class on a contingent fee basis, and will provide

representation to the class adequate pursuant to Rule 23(a)(4). The fact that Meyer has filed this Motion testifies to the vigor of Meyer's representation of the Class. Likewise, no potential conflicts exist here: Meyer shares the precise same claims as the Class, and has an acute interest in stopping PRA's violations of the TCPA. "[C]ourts have generally declined to consider conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. The burden is on the party opposing certification to show that the named plaintiff will be an inadequate representative. *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984). Meyer and his counsel satisfy Rule 23(a)(4).

### B. The Class Meets the Requirements of Rule 23(b)

Given the limited purpose of the Injunctive Class, certification is appropriate under Rule 23(b)(2). Class certification under Rule 23(b)(2) requires that the defendant acts "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A defendants' conduct is directed towards the class, within the meaning of Rule 23(b)(2), "even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments. Hence,

> [e]ven if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate [under Rule 23(b)(2)]. . . . "All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."

*Walters*, 145 F.3d at 1047 (quoting 7A Charles Alan Wright, Arthur R. Miller, et al, Federal Practice & Procedure § 1775 (2d ed. 1986)). Certification under Rule 23(b)(2) is appropriate where the class action will "settl[e] the legality of the behavior [at issue] with respect to the class as a whole[.]" Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments. Rule 23(b)(2) certification is appropriate where the proposed injunction will settle the legality of PRA's calls as to the whole class.

**III.     CONCLUSION**

There is sufficient evidence to conclude that PRA routinely violates the Telecommunications Privacy Act, despite repeated warnings that it is calling cellular telephone numbers without the recipient's prior consent. Meyer is entitled to injunctive relief to protect him and the other recipients of PRA's calls. The proposed preliminary injunction balances appropriate protection of the privacy interests of Meyer and the other recipients of PRA's calls, while minimizing the harm to PRA's business to what is required to comply with the TCPA. The Court should grant the proposed injunction. The Court should also certify the proposed Injunctive Class in order to effectuate the proposed injunction.

Dated: May 16, 2010          By: _____
                                            s/David C. Parisi
                                            David C. Parisi (162248)
                                            Suzanne Havens Beckman (188814)
                                            PARISI & HAVENS LLP
                                            15233 Valleyheart Drive
                                            Sherman Oaks, California 91403
                                            (818) 990-1299 (telephone)
                                            (818) 501-7852 (facsimile)
                                            dcparisi@parisihavens.com
                                            shavens@parisihavens.com

                                            Ethan Preston (263295)
                                            PRESTON LAW OFFICES
                                            21001 North Tatum Blvd., Suite 1630-430
                                            Phoenix, Arizona 85050
                                            (480) 269-9540 (telephone)
                                            (866) 509-1197 (facsimile)
                                            ep@eplaw.us

                                            *Attorneys for Plaintiff Jesse Meyer, on his own behalf, and behalf of all others similarly situated*

                                            Email:  dcparisi@parisihavens.com