ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Edward D. Lodgen, Bar No. 155168
Julia V. Lee, Bar No. 252417
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:    310-552-0130
Facsimile:    310-229-5800

Christopher W. Madel
MN Reg. No. 230297 (*pro hac vice*)
Jennifer M. Robbins
MN Reg. No. 387745 (*pro hac vice*)
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402-2015
Telephone:    612-349-8500
Facsimile:    612-339-4181

*Attorneys for Defendant Portfolio Recovery
Associates, LLC*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE MEYER, an individual, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware limited liability company, and DOES 1-100, inclusive, <br><br> Defendant. | Case No. 3:11-CV-01008-AJB-RBB <br><br> Hon. Anthony J. Battaglia <br><br> **MEMORANDUM IN OPPOSITION TO PLAINTIFF JESSE MEYER'S MOTION FOR PRELIMINARY INJUNCTION RESTRAINING DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC FROM FUTURE VIOLATIONS OF THE TELECOMMUNICATIONS PRIVACY ACT, 47 U.S.C. § 227(b)(1)(A)(iii) AND FOR LIMITED CLASS CERTIFICATION** <br><br> **Date:**      **June 23, 2011** <br> **Time:**      **1:30 p.m.** <br> **Location:**  **Courtroom 12, Second Floor** <br>              **Edward J. Schwartz Courthouse** <br>              **940 Front Street** <br>              **San Diego, California 92101-8900** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTS ..................................................................................................................... 1

I.  Portfolio Recovery Associates has ceased all calls to Plaintiff's cellular telephone .......... 1

II.  PRA's dialers are not "automatic telephone dialing systems" under the TCPA ................. 1

III.  Plaintiff is not an adequate class representative ................................................. 1

ARGUMENT ............................................................................................................. 2

I.  A Preliminary Injunction Is Not Necessary to Prevent Purported Violations of the TCPA ..... 2

II.  Plaintiff Cannot Meet His Heavy Burden of Proving the Need for a Preliminary Injunction .... 3

    A.  Plaintiff cannot demonstrate that an irreparable injury will occur if the Court denies his motion for a preliminary injunction ...................................... 4

        1.  Because calls to Plaintiff have ceased, he cannot demonstrate irreparable harm ................................................................................. 5

        2.  Plaintiff cannot exempt himself from the irreparable harm requirement .... 5

        3.  Plaintiff cannot identify any injury for which damages will not be more than adequate ........................................................................... 6

        4.  Plaintiff cannot prove additional damage that would support an injunction ............................................................................................ 7

    B.  Plaintiff cannot demonstrate the viability of his purported class for a limited purpose or that he is likely to succeed on the merits ............................. 9

        1.  Plaintiff's effort to certify a class for a limited purpose fails .................... 9

            a.  Plaintiff cannot force his request into Rule 23(c)(4) ..................... 9

            b.  Rule 23(b)(2) is not applicable to a preliminary injunction .......... 10

        2.  The putative class is unlikely to be certified for any purpose .................. 11

            a.  Plaintiff is not an adequate class representative ........................... 12

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

        b.     Consent is a key individual question of fact that defeats commonality and predominance, and Plaintiff's proposed class definition is overbroad ................................................................. 13

    3.    Plaintiff cannot demonstrate that PRA's dialers qualify as "automatic telephone dialing systems" under the TCPA ........................................... 17

        a.     PRA's dialers do not have the requisite capacity under the TCPA................................................................................. 18

        b.     Plaintiff's attempts to apply a broader definition of "ATDS" than that stated in the TCPA run contrary to the Ninth Circuit's *Satterfield* analysis and to express Congressional intent ............. 19

    4.    Application of the TCPA to PRA in the manner suggested by Plaintiff would violate the Constitution of the United States................................. 21

C.    The public interest will not be served by Plaintiff's unsupported demand for a preliminary injunction................................................................................................. 22

D.    The Balance of the Harms Weighs Heavily Against a Preliminary Injunction .... 24

III.    A Nominal Bond Is Not Sufficient .................................................................................. 24

CONCLUSION ....................................................................................................................... 25

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 4

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................. 13

*American Federation of Government Employees, Local 1616 v.* Thornburgh,
    713 F. Supp. 359 (N.D. Ca. 1989) ........................................................... 8

*Anderson v. United States*,
    612 F.2d 1112 (9th Cir. 1980) ................................................................. 4

*Arcamuzi v. Continental Air Lines, Inc.*,
    819 F.2d 935 (9th Cir. 1987) ............................................................... 4, 5

*Ash v. Brunswick Corp.*,
    405 F. Supp. 234 (D. Del. 1975) ........................................................... 12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .............................................................................. 10

*Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron Div. of Textron, Inc.*,
    688 F.2d 997 (5th Cir. 1982) ................................................................... 3

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ........................................................................ 11, 13

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) ................................................................... 5

*CE Design Ltd. v. King Arch. Metals, Inc.*,
    NO. 10-8050, 2011 U.S. App. LEXIS 5365 (7th Cir. Mar. 18, 2011) ......... 12

*Chevron U.S.A, Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ........................................................................ 19, 20

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982) ............................................................................... 2

*Cobb v. Avon Prods, Inc.*,
    71 F.R.D. 652 (W.D. Pa. 1976) ............................................................. 12

*Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*,
    305 F. Supp. 1210 (N.D Cal. 1969) ......................................................... 7

*Dish Network Corp. v. FCC*,
    No. 10-16666, 2011 U.S. App. LEXIS 3588 (9th Cir. Feb. 24, 2011) .......... 3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

*Earth Island Inst. v. Carlton*,
   626 F.3d 462 (9th Cir. 2010) ................................................................. 3

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) ............................................................................ 24

*Forman v. Data Transfer, Inc.*,
   164 F.R.D. 400 (E.D. Pa. 1995) ........................................................... 14

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*,
   No. 06-C0949, 2008 U.S. Dist. LEXIS 46492 (N .D. Ill., June 11, 2008) ......................... 14

*Garrett v. City of Escondido*,
   465 F. Supp. 2d 1043 (S.D. Cal. 2006) ................................................ 24

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ....................................................................... 11, 13

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008), *aff'd* 624 F.3d 698 (5th Cir. 2010) ................... 13, 14, 15, 16

*Gilman v. Schwarzenegger*,
   No. 10-15471, 2010 U.S. App. LEXIS 26975 (9th Cir. Dec. 6, 2010) .......................... 3

*Green v. Johnson*,
   513 F. Supp. 965 (D. Mass. 1981) ....................................................... 10

*Hall v. Nat'l Recovery Sys.*,
   No. 96-132-CIV-T-17(c), 1996 U.S. Dist. LEXIS 11992 (M.D. Fla. Aug. 9, 1996) .......... 12

*Hicks v. Client Services, Inc.*,
   No. 07-61822-CIV, 2008 U.S. Dist. LEXIS 101129 (S.D. Fla. Dec. 11, 2008) ........... 14, 15

*Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*,
   938 F. Supp. 612 (C.D. Cal. 1996) ....................................................... 8

*In re Activision Sec. Litig.*,
   621 F. Supp. 415 (N .D Cal. 1985) ...................................................... 10

*Iverson v. Atlas Pac. Eng'g*,
   191 Cal. Rptr. 696 (Cal. Ct. App. 1983) .............................................. 9

*J2 Global Comm'ns, Inc. v. Blue Jay, Inc.*,
   No. 08-4254, 2009 U.S. Dist. LEXIS 111609 (N.D Cal. Aug. 4, 2009) ................. 5, 6

*Kenro, Inc. v. Fax Daily, Inc.*,
   962 F. Supp. 1162 (S.D. Ind. 1997) ................................................. 13, 14

*Levitt v. Fax.com*,
   No. WMN-05-949, 2007 U.S. Dist. LEXIS 83143 (D. Md. May 25, 2007) ................. 14

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) .......................................................................... 21

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ........................................................................... 5

*McDonald v. Sun Oil Co.,*
   548 F.3d 774 (9th Cir. 2008) ............................................................ 19

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.,*
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) .............................................. 8

*Michaels v. Internet Entertainment Group, Inc.,*
   5 F. Supp. 2d 823 (C.D. Cal. 1998) .................................................... 8

*N.D. v. State Dep't of Educ.,*
   600 F.3d 1104 (9th Cir. 2010) ............................................................ 3

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,*
   16 F.3d 1032 (9th Cir. 1994) ............................................................ 24

*Nix v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers,*
   479 F.2d 382 (5th Cir. 1973) ............................................................ 10

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,*
   762 F.2d 1374 (9th Cir. 1985) ....................................................... 6, 9

*Penzer v. Transp. Ins. Co.,*
   545 F.3d 1303, 1311 (11th Cir. 2008) ............................................... 7

*Prairie Band of Potawatomi Indians v. Pierce,*
   253 F.3d 1234 (10th Cir. 2001) .......................................................... 6

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
   944 F.2d 597 (9th Cir. 1991) ......................................................... 6, 7

*Sampson v. Murray,*
   415 U.S. 61 (1974) ............................................................................. 6

*Satterfield v. Simon & Schuster, Inc.,*
   569 F.3d 946 (9th Cir. 2009) ..................................................... 19, 20

*Siripongs v. Davis,*
   282 F.3d 755 (9th Cir. 2002) ............................................................. 3

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) ........................................................ 3, 4

*Swift & Co. v. United States,*
   276 U.S. 311 (1928) ........................................................................... 2

*United States v. Oakland Cannabis Buyers' Coop.,*
   532 U.S. 483 (2001) ........................................................................... 2

*Vinole v. Countrywide Home Loans, Inc.,*
   571 F.3d 935 (9th Cir. 2009) ........................................................... 11

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982) ............................................................................................ 3

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ...................................................................................... passim

*Zakar v. CHL Mortg. Pass-Through Trust 2006-HYB3,*
No. 11cv0457, 2011 U.S. Dist. LEXIS 37016 (S.D. Cal. Apr. 4, 2011) .......................... 3, 4

*Zinser v. Accufix Research Inst., Inc.,*
253 F.3d 1180 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001) ...................... 11

**Statutes**

47 U.S.C. § 227 ...................................................................................................... 13

47 U.S.C. § 227(a)(1) ............................................................................................. 18

47 U.S.C. § 227(a)(1)(A) ........................................................................................ 20

47 U.S.C. § 227(b)(1)(A) ........................................................................................ 13

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................... 17

47 U.S.C. § 227(b)(3) ........................................................................................ 2, 6

Fed. R. Civ. P. 23(a) ........................................................................................ 11, 13

Fed. R. Civ. P. 23(b) ........................................................................................ 11, 13

Fed. R. Civ. P. 23(b)(2) .................................................................................... 10, 11

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 11

Fed. R. Civ. P. 23(c)(4) .................................................................................... 9, 10

**Other Authorities**

137 Cong. Rec. 21,30821 (1991) ........................................................................ 6, 7

137 Cong. Rec. H 11307 ...................................................................................... 21

Background on CTIA's Semi-Annual Wireless Industry Survey Results-
December 1985 to December 2010, available at
http://files.ctia.org/pdf/CTIA_Survey_Year_End_2010_Graphics.pdf ............................ 22

Fifth Amendment of the Constitution ...................................................................... 21

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
Report and Order, 18 FCC Rcd 14014  (2003) ....................................................... 23

Justin Hall, *More landlines getting heave-ho, Survey shows more people relying on cellphones,*
THE DAILY IBERIAN, Jan. 10, 2011, *available at*
http://www.iberianet.com/news/article_4dc354c5-bcef-5f59-9bc5-28cca7210a9c.html .... 22

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

*Rules and Regulations Implementing*
     *the Telephone Consumer Protection*
     *Act of 1991* ................................................................................................ 14

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
     Memorandum Opinion and Order, 10 FCC Rcd. 12391 (1995) ............................. 23

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

**INTRODUCTION**

Plaintiff's motion is out of step with the facts and the law. There is simply no relief to be granted where: (1) calls to Plaintiff have ceased; and (2) Plaintiff cannot demonstrate any irreparable harm that will occur in the absence of a preliminary injunction. Most strikingly, Plaintiff puts the proverbial cart before the horse and asks the Court to extend this extraordinary relief to a class that is uncertified and for which he can demonstrate no basis for class certification. Because Plaintiff has failed to establish the requirements for either preliminary injunctive relief or class certification, his motion should be denied.

**FACTS**

**I.     Portfolio Recovery Associates has ceased all calls to Plaintiff's cellular telephone.**

Portfolio Recovery Associates, LLC ("PRA") has ceased all calls to Plaintiff's cellular telephone, rendering an order for injunctive relief without practical effect. (Stern Dec. ¶ 12.) Indeed, PRA has not placed any calls to Plaintiff's cellular telephone number since January 4, 2011, and will not do so in the future. (*Id.*)

**II.    PRA's dialers are not "automatic telephone dialing systems" under the TCPA.**

As thoroughly described in the Declaration of Joshua S. Cherkasly, PRA does not have an automatic telephone dialing system that has the capacity to store or produce telephone numbers using a random or sequential number generator.   (Cherkasly Decl. ¶¶ 1, 8-18.)

**III.   Plaintiff is not an adequate class representative.**

Plaintiff has a criminal record dating back to 1998. (Robbins Decl.[1] Ex. A.) In 1998, Plaintiff was convicted of possession of methamphetamine, and in 2001 he received multiple felony convictions for possession of methamphetamine and cocaine, receiving stolen property

---

[1]     Citations to "Robbins Decl." refer to the Declaration of Jennifer M. Robbins filed in support of PRA's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction and Limited Class Certification.

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

(including credit cards and ATM cards), theft of access cards from four or more persons, theft of

more than $400, and falsifying a driver's license for the purpose of committing a forgery. (*Id*.)

Plaintiff was sentenced to five years in California state prison and ordered to pay restitution. (*Id*.)

Plaintiff has also used a host of aliases (in fact, too many for him to remember), including "Jesse

Helm Sherlock, Jay Helm, and *an assortment of other names which he does not recall*." (*Id*. at

Form Interrog. 2.1 (emphasis added).) Additionally, Plaintiff has had six addresses in the past two

years, typically moving every three to four months. (*Id*. at Form Interrog. 2.5.)

## ARGUMENT

**I.    A Preliminary Injunction Is Not Necessary to Prevent Purported Violations of the TCPA.**

Under the Telephone Consumer Protection Act ("TCPA"), Congress created an equitable

remedy that allows a plaintiff to choose injunctive relief, damages, or both. 47 U.S.C.

§ 227(b)(3). But even when a statute allows for injunctive relief, courts enjoy discretion in

deciding whether or not to order this extraordinary remedy (*see Winter v. Natural Res. Def.

Council, Inc.*, 555 U.S. 7, 28 (2008) *infra*), and can consider whether such relief is necessary. *See

United States v. Oakland Cannabis Buyers' Coop.,* 532 U.S. 483, 496-97 (2001) (distinguishing a

case wherein the court lacked discretion to award injunctive relief because it was the "only means

of ensuring compliance" (internal citations omitted)). Further, "an injunction deals primarily, not

with past violations, but with threatened future ones." *Swift & Co. v. United States*, 276 U.S. 311,

326 (1928). While PRA's voluntary cessation does not impact this Court's ability to make an

eventual determination of liability for past calls, it does render Plaintiff's motion for a preliminary

injunction functionally moot. *Cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289

(1982) (abandonment of an activity "is an important factor" on the question of whether to enjoin

the activity). Because there is no longer a valid concern that PRA will call Plaintiff on his cellular

telephone, Plaintiff cannot demonstrate that injunctive relief is necessary to prevent future

violations. *See Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311 (1982) (an injunction "is not a remedy which issues as of course" and "should only issue where intervention of a court of equity is essential in order to protect . . . against injuries otherwise irremediable") (internal quotation omitted)), *Siripongs v. Davis*, 282 F.3d 755, 757 (9th Cir. 2002) (holding injunctive relief unnecessary where there was no longer a significant concern regarding potential wrongful action); *see also Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron Div. of Textron, Inc.*, 688 F.2d 997, 999 (5th Cir. 1982) (new bargaining agreement "made injunctive relief unnecessary"). Here the Court should exercise its discretion and deny Plaintiff's Motion for a Preliminary Injunction because there is no practical threat of future violations.

## II.     Plaintiff Cannot Meet His Heavy Burden of Proving the Need for a Preliminary Injunction.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 28. "A preliminary injunction is an 'extraordinary and drastic remedy' and is never awarded as of right." *Gilman v. Schwarzenegger*, No. 10-15471, 2010 U.S. App. LEXIS 26975, at *9 (9th Cir. Dec. 6, 2010) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). As such, Plaintiff faces a "heavy burden" in proving that he is entitled to this "extraordinary remedy." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

The Ninth Circuit applies the test established in *Winter* when deciding whether to grant a preliminary injunction. *Dish Network Corp. v. FCC*, No. 10-16666, 2011 U.S. App. LEXIS 3588, at *9 (9th Cir. Feb. 24, 2011); *N.D. v. State Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010); *Earth Island Inst.*, 626 F.3d at 469; *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *Zakar v. CHL Mortg. Pass-Through Trust 2006-HYB3*, No. 11cv0457, 2011 U.S. Dist. LEXIS 37016, at *3 (S.D. Cal. Apr. 4, 2011) (Battaglia, J.). Under *Winter*, Plaintiff must prove: "(1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Dish Network Corp.*, 2011 U.S. App. LEXIS 3588, at *9 (citing *Winter*,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

555 U.S. at 24-25). "A party moving for injunctive relief must demonstrate irreparable injury is 'likely' in the absence of an injunction, rather than merely possible." *Id.* at *4 (quoting *Winter*, 555 U.S. at 26).

Plaintiff cites the wrong standard in his opening memorandum. (Pl. Mem. at 1 ("the movant may demonstrate '*either* a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.'") (emphasis in original, citations omitted).) What Plaintiff suggests has been rejected since *Winter*—Plaintiff must establish *all* elements of the *Winter* test, including the *likelihood* of irreparable injury, not just the possibility. *Winter*, 555 U.S. at 24-25; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Zakar*, 2011 U.S. Dist. LEXIS 37016, at *4; *Stormans*, 586 F.3d at 1127 ("Applying *Winter*, we have since held that, '[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.'") (internal citation omitted).

Further, Plaintiff requests a mandatory injunction, which, unlike a prohibitory injunction, does not maintain the status quo. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Courts disfavor granting mandatory injunctions and will only do so when the facts and law *clearly* favor the moving party and "extreme or very serious damage will result"—not in "doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* at 1114-15 (emphasis added) (internal citation omitted). Here, the facts and law do not favor Plaintiff; "extreme or very serious damage" will not result in the absence of preliminary relief, and Plaintiff's alleged injury is "capable of compensation in damages." *See id.*

### A.   Plaintiff cannot demonstrate that an irreparable injury will occur if the Court denies his motion for a preliminary injunction.

Neither Plaintiff nor the uncertified class he purports to represent will suffer irreparable injury if the Court denies Plaintiff's motion. A party seeking a preliminary injunction must, *at a minimum*, "demonstrate a significant threat of irreparable injury" by clear and convincing evidence. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) (internal

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

citation omitted). A preliminary injunction should be denied unless the movant clearly demonstrates "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 27 (emphasis in original); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

> **1.      Because calls to Plaintiff have ceased, he cannot demonstrate irreparable harm.**

A plaintiff seeking injunctive relief must demonstrate, "[a]t a minimum," that "it will be exposed to irreparable harm." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (internal citation omitted). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* (internal citation omitted). Given PRA's deliberate cessation of calls to Plaintiff's cellular phone, prospective calls are unauthorized by PRA, will not occur, and are highly speculative. (Stern Dec. ¶ 12.) Future violations of such a speculative nature fail to constitute irreparable injury sufficient to merit preliminary injunctive relief. *See Caribbean Marine Servs. Co.*, 844 F.2d at 674-75.

> **2.      Plaintiff cannot exempt himself from the irreparable harm requirement.**

Plaintiff argues that he is exempt from proving irreparable harm because the TCPA allows for injunctive relief. (Pl. Mem. 8.) It is well settled, however, that the standard to obtain a preliminary injunction requires proof of irreparable harm even when a statute authorizes injunctive relief. *Winter*, 555 U.S. at 27; *Arcamuzi*, 819 F.2d at 937. Plaintiff in fact acknowledges that he "does not rest on the TCPA's statutory authorization of injunctive relief" to support his preliminary injunction motion. (Pl. Mem. 8.)

Plaintiff does not provide a cogent explanation for why he may avoid this showing. Plaintiff cites only *J2 Global Comm'ns, Inc. v. Blue Jay, Inc.*, No. 08-4254, 2009 U.S. Dist. LEXIS 111609, at *24 (N.D Cal. Aug. 4, 2009) where the court granted damages and an injunction in a TCPA case where the defendant *admitted liability*. *Id* at *6. In so ruling, the court

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

did not require proof of irreparable harm because the court had established ultimate liability under the statute. *Id.* at *24. *Blue Jay* does not alter Plaintiff's burden to show irreparable harm where, as here, PRA does not admit liability and intends to demonstrate both that its actions are legal and that the putative class is not appropriate for certification. In short, here Plaintiff seeks a *preliminary* injunction, which requires a more stringent showing of irreparable harm because the court has not made a determination on the merits, where in contrast the moving party in *Blue Jay* sought a *permanent* injunction after the court made a determination on the merits. *See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

### 3.   Plaintiff cannot identify any injury for which damages will not be more than adequate.

"[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (internal citation omitted); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended [. . .] are not enough" to constitute irreparable injury); *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) ("[I]rreparable harm is . . . suffered when the injury can[not] be adequately atoned for in money."). As indicated above, PRA will not contact Plaintiff in the future. As to the uncertified class, even were liability to be found and the class certified, monetary damages would be more than adequate to compensate any claimants.

The TCPA provides that a person may bring an action to recover the greater of: (1) actual monetary loss from such a violation; or (2) $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B). The TCPA's legislative history provides the reasoning for the remedy of $500 per violation. *See* 137 Cong. Rec. 21,30821 (1991). Congress predetermined that $500 per violation will adequately compensate plaintiffs and deter violations of the TCPA. *See* 137 Cong. Rec.

21,30821 (1991) (statement of Sen. Hollings) ("The amount of damages in this legislation is set to be fair to . . . the consumer"); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (finding that the TCPA's statutory damages account for "uncertain actual damages"). The damages allowed by the TCPA will provide adequate compensation if Plaintiff proves his case. This Court should not alter the remedies available to Plaintiff where, as here, the "injury can be remedied by a damage award." *Rent-A-Center, Inc.*, 944 F.2d at 603.

### 4. Plaintiff cannot prove additional damage that would support an injunction.[2]

Plaintiff tries to avoid certain denial of his motion by arguing that a monetary award is not an adequate remedy for his harms under the TCPA. Plaintiff suggests that his damages include "privacy violations" such as "loss of cellular airtime, wasted time, and interference with . . . [his] cellular telephones" and that these damages are difficult to quantify, necessitating injunctive relief. (Pl. Mem. 12 n.4.) Yet, Plaintiff's claims to such damages are belied by Plaintiff's counsel's repeated assertions that actual damages are irrelevant to Plaintiff's TCPA claim. (Robbins Decl. Exs. C & D.)[3] Plaintiff's "privacy" claim is specious and does not meet the requirements for a preliminary injunction.

Even were Plaintiff's claims sincere, his alleged "privacy" violation lacks the severity that would be required. Irreparable injury signifies that the injury is certain and great. *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F. Supp. 1210, 1216 (N.D Cal. 1969). The "privacy" violation alleged by Plaintiff is neither certain nor great. Plaintiff received no more than four

---

[2]    Beyond the fact that Plaintiff cannot prove such damage, there is *no* evidence that such claimed damage has been sustained by any of the other members of the putative class.
[3]    On May 20, 2011, Plaintiff's counsel stated in an email that "[t]he complaint seeks statutory damages under the TCPA, so I'm not sure how evidence of 'actual damages and lost money and property' would be relevant." (Robbins Decl. Ex. C.) Plaintiff's counsel reiterated this position in a May 26, 2011 letter, stating that his "actual damages are not relevant, and the complaint's allegations of actual damages are *superfluous* to his TCPA claims" and that he was "willing to amend his complaint to omit any claims of actual damages under his TCPA claim." (Robbins Decl. Ex. D (emphasis added).)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

telephone calls, and the cases he cites outline vastly different circumstances. *Michaels v. Internet Entertainment Group, Inc.* is inapposite because a preliminary injunction was sought to avoid the distribution of a sexual video, and the court found the images would be forever public if the tape were released. 5 F. Supp. 2d 823, 842 (C.D. Cal. 1998).  Similarly, in *American Federation of Government Employees, Local 1616 v. Thornburgh* the preliminary injunction sought to prohibit "urinalysis searches." 713 F. Supp. 359 (N.D. Ca. 1989). Plaintiff cannot analogize calling a cell phone to distributing a sex tape or conducting urinalysis searches.

Similarly, Plaintiff's claim that PRA impaired his right to exclude others from using his cell phone does not aid his cause. *See Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215-17 (C.D. Cal. 2007) (injunction to enjoin infringement of copyrighted peer-to-peer file trading system because it would impair brand recognition and brand share); *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 615-16 (C.D. Cal. 1996) (injunction to enjoin infringement due to trademark owner's inability to control its reputation). A call to Plaintiff's cell phone does not rise to the same level as infringement of legally protected intellectual-property rights.

Even if there were a "privacy" violation, Plaintiff is precluded from seeking a preliminary injunction for these purported harms because here, again, a monetary award would serve as more than sufficient compensation. Under the TCPA, Plaintiff may be entitled to a total award of at least $2,000 (equaling $500 for each of the four times that PRA contacted Plaintiff on his cell phone). Plaintiff alleges that he may also be entitled to damages equal to "the amounts of lost/wasted cellular telephone airtime," which amounts to four minutes for the three alleged calls from PRA. (Robbins Decl. Ex.  A, Form Interrog. 9.1.) Plaintiff's relevant cell phone bills for September, November, December 2010, and January 2011 *in total* amount to $62.28, $70.04, $51.12, and $48.92 respectively. (Robbins Decl. Ex. B, MEYER11, MEYER19, MEYER27,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

MEYER37.) Since Plaintiff's *total* bills for the relevant months and airtime do not come close to the $2000 to which he may be entitled under the statute, monetary relief would more than compensate Plaintiff if he is successful at trial.[4]

### B.   Plaintiff cannot demonstrate the viability of his purported class for a limited purpose or that he is likely to succeed on the merits.

Plaintiff's inability to demonstrate irreparable harm is fatal to his motion. *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985) (without the "minimum showing" of a likelihood of irreparable injury, a court "need not decide whether [the movant] is likely to succeed on the merits"). Still, in an extraordinary overreach, Plaintiff seeks to leverage his weak showing on irreparable harm and extend the related request for relief to a putative class—long before the parties have completed discovery on either class certification or the merits of Plaintiff's claims. There is no legal basis for Plaintiff's request.

### 1.   Plaintiff's effort to certify a class for a limited purpose fails.

#### a.   Plaintiff cannot force his request into Rule 23(c)(4).

In an effort to transform Rule 23(c)(4)—a provision that allows a court to focus certain issues as applied to an otherwise certifiable class—into a massive loophole that makes the requirements of Rule 23 meaningless, Plaintiff argues that this rule provides the Court with "sufficient flexibility" to certify a class for a limited purpose. (*See* Pl. Mem. 15-16.)

Rule 23(c)(4) provides that "when appropriate an action may be brought or maintained as a class action with respect to particular issues." Rule 23(c)(4) is not a catch-all provision to short-

---

[4]     Plaintiff has previously suggested that the "disruption of his privacy" entitles him to emotional distress damages. (Robbins Decl.  Ex. A, Form Interrog. Nos. 6.1. 6.2; Compl. ¶ 2.) Plaintiff's interrogatory responses, however, undercut any emotional distress damages. Plaintiff admits that "his emotional distress subsided shortly after each of the telephone calls," and that he did not seek medical treatment. (Robbins Decl.  Ex. A, Form Interrog. Nos. 6.3, 6.4, 6.5, 6.6, 6.7.) Minor annoyances are insufficient to prove emotional distress under California law. *Iverson v. Atlas Pac. Eng'g*, 191 Cal. Rptr. 696, 703 (Cal. Ct. App. 1983).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

cut class certification whenever injunctive relief is sought by an alleged class. Instead, Rule 23(c)(4) assumes that the prerequisites to class certification in Rule 23(a) are satisfied. *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 249 n.29 (1988) (subdivisions (c)(1) and (c)(4) permit a district court to *amend* a certification order); *Green v. Johnson*, 513 F. Supp. 965, 976 (D. Mass. 1981) (refusing to apply Rule 23(c)(4) to certify a subclass because the subclass "probably would not independently satisfy the requirements of [Rule] 23(a)"). Indeed, the flexibility provided by Rule 23(c)(4) is intended to address situations such as adjudication of liability in cases involving fraud or the establishment of subclasses in complex cases. *See* Rule 23(c)(4) Cmt.; *see also In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D Cal. 1985) (citing 7A Wright & Miller, Federal Practice & Procedure § 1790) (noting that Rule 23(c)(4)'s proper utilization affords courts flexibility to restructure complex cases to handle class actions that would otherwise be unmanageable). This rule does not reach to situations where there is no initial basis for certifying the class. *See Nix v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 479 F.2d 382, 385-86 (5th Cir. 1973). And Rule 23(c)(4) does not permit Plaintiff to bypass basic Rule 23 prerequisites in the context of a preliminary injunction motion.

### b.   Rule 23(b)(2) is not applicable to a preliminary injunction.

Plaintiff alternatively contends that "the Injunctive Class" satisfies Rule 23(b)(2). (*See* Pl. Mem. 15-21.) Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that *final injunctive relief* or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) (emphasis added). Here Plaintiff seeks a *preliminary injunction*—far from any determination as to final injunctive relief. As a result, Plaintiff's request has no legal foundation in Rule 23(b)(2).

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

ATTORNEYS AT LAW

MINNEAPOLIS

### 2. The putative class is unlikely to be certified for any purpose.

Any class certification effort will require that Plaintiff satisfy Rule 23(a), which he cannot. Class actions "are an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). A class can be certified only if the plaintiff demonstrates the requirements of Fed. R. Civ. P. 23(a)—numerosity, typicality, commonality, and adequacy—*and* plaintiff satisfies one of the three requirements in Fed. R. Civ. P. 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001).

Although for purposes of this motion Plaintiff seeks to certify a class under Rule 23(b)(2), based on the Complaint allegations it appears that Plaintiff ultimately intends to seek class certification under Rule 23(b)(3). Rule 23(b)(3) requires Plaintiff to prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b)(3); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). In weighing the Rule 23 factors, courts do not presume Plaintiff's factual assertions. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Rather, a class will only be certified if the Court is convinced, after "rigorous analysis" into the facts, that Rule 23 is satisfied. *Id.* at 161. This analysis requires the Court to "probe behind the pleadings" on issues that may overlap with the merits of the case. *Id.* at 160.

As set out in his Complaint, Plaintiff seeks to certify the following class:[5] (1) "All natural persons residing in California" as of the date the Complaint was filed; (2) "who received one or more telephone calls from Defendants or their agents to such person's cellular telephone number;

---

[5] Now that Plaintiff is seeking injunctive relief, Plaintiff has improperly broadened the class to include persons *who have not yet received calls on their cell phones*. As discussed above, Plaintiff is not entitled to certify a class for the limited purpose of enjoining PRA.

and (3) "where Defendants did not obtain such cellular telephone number from a voluntary transaction between the person and some third party that assigned or sold any debt or claim resulting from such transaction to Defendants." (Compl. ¶ 21.) For the reasons set forth below, Plaintiff is unlikely to prevail in certifying such a class.

### a.  Plaintiff is not an adequate class representative.

Rule 23(a)(4) requires that the named party be able to "fairly and adequately protect the interests of the class." A named plaintiff is not an adequate class representative if he has "serious credibility problems" that would shift the fact finder's focus to plaintiff's credibility to the detriment of absent class members. *CE Design Ltd. v. King Arch. Metals, Inc.*, NO. 10-8050, 2011 U.S. App. LEXIS 5365, at *11, 17-18 (7th Cir. Mar. 18, 2011) (Posner, J.). Similarly, if past experience demonstrates that the named plaintiff "lacks the high standard of forthrightness, vigor, dedication, and sincerity," he may not be an adequate class representative. *See Cobb v. Avon Prods, Inc.*, 71 F.R.D. 652, 655 (W.D. Pa. 1976). Although a prior felony conviction does not necessarily preclude serving as a class representative, prior impeachable convictions or past findings of fraudulent conduct may render the named plaintiff inadequate. *See Ash v. Brunswick Corp.*, 405 F. Supp. 234, 248 (D. Del. 1975) (fraudulent conduct in a prior, unrelated case disqualified party from serving as class representative); *Hall v. Nat'l Recovery Sys.*, No. 96-132-CIV-T-17(c), 1996 U.S. Dist. LEXIS 11992, at *12-14 (M.D. Fla. Aug. 9, 1996) (plaintiff's "multitude of impeachable convictions and prior inconsistent statements" rendered him inadequate).

Plaintiff's criminal record, dating back to 1998, includes multiple convictions for deceptive conduct. Each of these crimes bears on his credibility and character. Also, Plaintiff's

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

history of misrepresenting his identity demonstrates that Plaintiff "lacks the high standard of forthrightness, vigor, dedication, and sincerity" to serve as a class representative.[6]

### b. Consent is a key individual question of fact that defeats commonality and predominance, and Plaintiff's proposed class definition is overbroad.

Rule 23(a)(2) requires Plaintiff to identify a significant issue of fact or law common to the class. *Falcon*, 457 U.S. at 155. Certification is proper only if the issues are of sufficient importance to the case such that the Court is convinced that the most efficient method of determining the rights of the parties is through a class action. *See Califano*, 442 U.S. at 701. To meet the strict requirements of Fed. R. Civ. P. 23(b), Plaintiff must further demonstrate that such common questions predominate over issues that pertain to individual class members. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). The party seeking class certification bears the burden of showing commonality and predominance. *Id.* The predominance test is "far more demanding" than the commonality requirement and examines whether the shared attributes will be the focus of the litigation. *Id.* at 623-24.

The TCPA prohibits calls using an ATDS to a cell phone *only if* they are made without the party's express consent. 47 U.S.C. § 227(b)(1)(A). Whether putative class members consented is "the central issue of liability" that requires the court to undertake a detailed analysis of each class member's individual circumstances—a fact-intensive inquiry that does not lend itself to resolution on a class-wide basis. *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997); *see also Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008), *aff'd* 624 F.3d 698 (5th Cir. 2010) ("[T]he predominant issue of fact [in a TCPA claim] is undoubtedly one of individual consent.") Class certification has been denied when the element of

---

[6]   Curiously, Plaintiff refuses to produce unredacted copies of his cellular telephone bills, leaving PRA to wonder whether the redacted telephone calls relate to further criminal conduct.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

consent is missing from the class definition. *See G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* No. 06-C0949, 2008 U.S. Dist. LEXIS 46492, *6 (N .D. Ill., June 11, 2008).

The term "prior express consent" is undefined in the text of the TCPA. *Cf.* 47 U.S.C. § 227, *et seq.* Therefore, the Federal Communications Commission's ("FCC") interpretation of the term is instructive. The FCC has indicated that when a person gives his cell phone number to a creditor, he consents to receive auto-dialed calls on his cell phone seeking payment of the related debt. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of ACA Int'l for Clarification and Declaratory Ruling, 23 FCC Rcd 559, 564, No. 07-232 ¶ 9 (2008) (". . . the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.") In addition, the legislative history of the TCPA provides that consent may be "given orally, in writing, electronically, or by any other means . . . . Such consent could be obtained, for instance, by including a clause in a contract or purchase agreement indicating that signing the agreement constitutes the purchaser's express consent to receive a computerized call concerning that service or product." 137 Cong. Rec. 30822 (Nov. 7, 1991).

Because "consent" can take many forms, courts have held that proof of consent is "an essential individual issue," making class certification inappropriate. *See, e.g.*, *Hicks v. Client Services, Inc.*, No. 07-61822-CIV, 2008 U.S. Dist. LEXIS 101129, at *19-21 (S.D. Fla. Dec. 11, 2008); *accord Gene & Gene LLC*, 541 F.3d at 329; *Levitt v. Fax.com*, No. WMN-05-949, 2007 U.S. Dist. LEXIS 83143, at *11-13 (D. Md. May 25, 2007); *Kenro*, 962 F. Supp. at 1169-70 (consent issue made class certification inappropriate for lack of typicality, commonality, and predominance); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (same). In

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

*Hicks*, as here, the plaintiff sought to certify a class of citizens who received telephone calls on their cell phones from a debt collector. 2008 U.S. Dist. LEXIS 101129, at *3. Hicks urged certification, arguing that "[t]he common issue of receiving the call at a wireless number predominates other individual issues," and to the extent consent is an issue, "Defendant has the burden of producing evidence that there had been consent." *Id.* at *18-19. The Court flat-out rejected this argument, stating:

> Plaintiff claims that she will be able to show at trial the lack of express consent by herself and the class members. *She does not, however, describe how she intends to do so without the trial degenerating into mini-trials on consent of every class member.*

*Id.* at *20 (emphasis added). In the end, "[w]hether the burden is on the Plaintiff or the Defendant, ultimately *consent is an issue that would have to be determined on an individual basis* at trial." *Id.* (emphasis added).[7] Because consent could not be determined on a class-wide basis, the court held that class certification would be improper for lack of commonality under Fed. R. Civ. P. 23(a) and predominance under Fed. R. Civ. P. 23(b)(3).

Here, as in *Hicks*, individual questions on consent preclude findings of both commonality and predominance. Under Plaintiff's proposed class definition, to determine if a putative class member provided "prior express consent" to call his cell phone, the court would first have to ascertain whether that class member provided his cell phone number to the original creditor through a "voluntary transaction." This will entail individual examination of each potential class member's credit application with his or her original creditor, as well as *all* communications—whether written or oral—between the debtor and any creditors. This determination will require, at

---

[7]     Other courts have held that individual issues on "affirmative defenses" may preclude class certification. S*ee, e.g.*, *Gene & Gene LLC*, 541 F.3d at 327 ("Whether established . . . as an affirmative defense or . . . as an element of the cause of action, the issue of consent will entirely determine how the proposed class-action trial will be conducted on the merits.") Thus, it is no defense that because PRA bears the burden to prove consent, a class should be certified.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

minimum, examination of all of PRA's records, as well as the original creditor's records that are not in PRA's possession, any of which may reflect consent.

In addition—and not contemplated by Plaintiff's class definition—even if the debtor did not provide PRA or the original creditor with the phone number called by PRA, there may be evidence that the debtor *expressly agreed* that a creditor could call him at *any* phone number. Indeed, various creditors have, for a number of years, included consent provisions in their applications. An amendment to the Washington Mutual Bank Account Agreement from September 2008, for example, clarifies that Washington Mutual Bank—the original creditor—may "send [the debtor] text messages or call [the debtor] using auto-dialers or prerecorded messages." The revised Section 22 "Telephone Communications" states:

> 22. Telephone Communications: You authorize us to call you or send a text message to you **at any number you provide or at any number at which we reasonably believe we can contact you**, including calls to mobile, cellular, or similar devises, and including calls using automatic telephone dialing systems and/or prerecorded messages, for any lawful purpose . . . .

(Stern Decl. Ex. A (emphasis added).) Accordingly, to determine consent will require "mini-trials" as to each class member and additionally that the Court review each credit agreement and its amendments—evidence not available on a common basis because of the number of original creditors from whom PRA purchases debt—to determine if that putative class member authorized contact at *any* phone number. *See Gene & Gene LLC*, 541 F.3d at 328-39 (where consent was gleaned from a variety of sources, no class-wide proof was possible). Thus, determination of this "essential individual issue" on liability would predominate over common questions.

Similarly, because Plaintiff's class definition includes all California residents who received calls on their cell phones from PRA "where Defendants did not obtain such cellular telephone number from a voluntary transaction between the person and some third party that assigned or sold any debt or claim resulting from such transaction to Defendants," the definition

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

is overbroad on the issue of consent. (Compl. ¶ 21.) Allowing a class to be certified under this definition would include individuals who, in fact, did consent and therefore do not have a viable TCPA claim. As such, Plaintiff is unlikely to succeed in certifying his proposed class.[8]

> **3.**   **Plaintiff cannot demonstrate that PRA's dialers qualify as "automatic telephone dialing systems" under the TCPA.**

Plaintiff's claims are unlikely to succeed on the merits because he cannot establish that PRA's dialers are "automatic telephone dialing systems" as required by the TCPA. Plaintiff contends that PRA's alleged violation "arises under" the following provision of the TCPA which makes it unlawful:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) ***using any automatic telephone dialing system*** . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (cited at Pl. Mem. 2) (emphasis added). As Plaintiff has admitted, the TCPA "*expressly defines* the phrase 'automatic telephone dialing system'" (Pl. Mem. 6 (emphasis added)):

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

---

[8]   Plaintiff attempts an end-run around the consent inquiry in his class definition by improperly equating "skip-tracing" with a lack of consent. Just because PRA used skip-tracing to obtain a phone number does not mean that PRA did not have consent to use that number. As demonstrated above, "[p]rior express consent" may have been given to the original creditor. Also, some class members may have consented to skip-tracing. Therefore, whether a cell phone number was skip-traced has no bearing on the consent question. Contrary to Plaintiff's claims, the "consent" question cannot be answered through common proof, *i.e.*, by getting a list of all numbers obtained through skip-tracing, but rather must be determined through discovery of individual contracts and communications.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

(B) to dial such numbers.

47 U.S.C. § 227(a)(1). Consequently, Plaintiff's claims are dependent on his ability to establish that PRA's dialers qualify as an ATDS by having "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." Plaintiff's conclusory assertions that "there is little room to doubt that PRA's Avaya Proactive Contact Dialer constitutes an ATDS" are insufficient to establish the requisite capacity under the statute. (Pl. Mem. 6.)

### a.    PRA's dialers do not have the requisite capacity under the TCPA.

PRA's dialers do not have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. (Cherkasly Decl. ¶¶ 1, 8-18.) In fact, PRA's dialers have never had the capacity to store or produce numbers using a random or sequential number generator. (*Id.* ¶ 8.) PRA would be required to invest significant resources to change the dialers to achieve that capacity. (*See id.* ¶ 10.) Moreover, in contrast to telemarketers, it does not make business sense for PRA to use dialers with the capacity to store or produce numbers using a random or sequential number generator. (*Id.* ¶¶ 11-16.) PRA intentionally avoids calling debtors sequentially or randomly to ensure compliance with federal restrictions on the times of day that PRA may contact debtors as well as to increase the chances that PRA will be able to reach the debtors to collect the debt. (*Id.*) Because PRA's dialers do not have the capacity to store or produce numbers using a random or sequential number generator, PRA's dialers do not fulfill the requirements of an ATDS under the TCPA.

Plaintiff's effort to show that PRA's dialers have the requisite capacity under the TCPA consists of the logical fallacy that because dialers are "capable of dialing computer-generated lists of telephone numbers" and "lists *can contain* random or sequential lists of telephone numbers," the dialers "constitute ATDSs under 47 U.S.C. § 227(a)(1)." (Pl. Mem. 6-7 (emphsis added).) Plaintiff's assertion that "lists can contain random or sequential lists" is not only unsupported by a citation to any evidence, but is also irrelevant to the question of whether PRA has the capacity to

store or produce numbers using a random or sequential number generator—the key element missing from PRA's dialers.

> ### b. Plaintiff's attempts to apply a broader definition of "ATDS" than that stated in the TCPA run contrary to the Ninth Circuit's *Satterfield* analysis and to express Congressional intent.

Plaintiff's attempts to apply a broader definition of an ATDS than the definition expressly provided by Congress in the TCPA must be rejected. In reviewing an agency's construction of a statute that the agency administers, the court must answer two questions. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* Only if "the court determines Congress has not directly addressed the precise question at issue" does the court then ask the second question of "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at n.9. The Ninth Circuit emphasized this approach in its *Satterfield* decision in stating that "[t]he preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (alteration in original) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)).

The Court in *Satterfield* went on to specifically address the TCPA's definition of ATDS: "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Id.* (emphasis in original). The Court began, and ended, its inquiry of the meaning of ATDS with the statutory text. *Id.* at 950-51. At no time did the Court analyze, let alone defer to, the FCC's interpretation of

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ATDS set out in the FCC's 2003 Order cited by Plaintiff. *See id.* Notably, the Court did defer to the FCC's 2003 Order later in its decision on the entirely separate question of the interpretation of the word "call;" a word that, in contrast to ATDS, was left undefined in the TCPA. *Id.* at 951-54. In affording *Chevron* deference to the FCC's interpretation of "call," the Court noted, first and foremost, that "'call' is not defined by the TCPA." *Id.* at 953. Only then did the Court go on to the second step of the *Chevron* analysis to determine whether "the FCC's interpretation of 'call' is reasonable." *Id.* at 954. Thus, the Court had the opportunity to analyze the FCC's interpretation of "ATDS" but instead the Court applied the definition as expressly stated in the statutory text of the TCPA.

The same application of the statutory definition of "ATDS" is warranted here, where the question of whether the technology at issue has the requisite capacity to qualify as an ATDS is presented. *See id.* 950. In *Satterfield*, an expert testified that the system "stored telephone numbers to be called and subsequently dialed those numbers automatically and without human intervention" and that "'[t]he cellular phone numbers residing in the cellular phone number database . . . are applied in sequence, as they are stored in the database.'" *Id.* at 951 (quoting the record). The Court found that this testimony was insufficient to establish capacity and remanded the question to the district court. *Id.*

Here, as in *Satterfield*, the Court's inquiry must begin and end with the statutory text because an express definition of an ATDS is provided. The legislature said in the statute what it meant and meant what it said: to qualify as an ATDS, equipment must have the "capacity—(A) to store or produce telephone numbers to be called using a random or sequential number generator." 47 U.S.C. § 227(a)(1)(A). PRA's dialers do not have this capacity. Accordingly, Plaintiff cannot establish likelihood on the merits of his TCPA claims and his Motion for Preliminary Injunction must be denied.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

4.     **Application of the TCPA to PRA in the manner suggested by Plaintiff would violate the Constitution of the United States.**

Application of the TCPA to PRA under the circumstances of this case would violate PRA's Due Process rights under the Fifth Amendment of the Constitution. U.S. CONST. amend. V. In examining whether a violation of PRA's Due Process rights has occurred, the Court must consider: private interests that will be affected by this action; the risk of an erroneous deprivation of that interest, and the value of additional or alternative safeguards; and, the government's interest, including additional costs and administrative burdens that additional procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Examination of each of these factors demonstrates that PRA's property interests will be affected by this action and that there is a substantial risk that PRA will be erroneously deprived of those interests if this action continues. In contrast, impact to the government's interests is limited because the TCPA was not intended by Congress to apply to a debt collector such as PRA under circumstances like those here.

The TCPA was designed to restrict "commercial telemarketing solicitations." 137 Cong. Rec. H 11307 (finding, *inter alia*, an "increased use of cost-effective telemarketing techniques," "[o]ver 30,000 businesses actively telemarket[ing] goods and services," and consumer outrage over "calls to their homes from telemarketers"). To the extent the statute was intended to apply to industries outside of telemarketing, the TCPA focuses on preventing seizure of "emergency or medical assistance telephone line[s]" or preventing "an inordinate burden on the consumer." *Id.*

PRA engages in neither telemarketing, nor in seizing emergency or medical assistance phone lines because it contacts only those individuals whose distressed accounts have been charged off and sold to PRA. (Stern Decl. ¶¶ 6-9.) Consequently, the only rationale that can apply to PRA is the theoretical burden on a cell-phone user who receives and pays for the calls. When the statute was enacted, costs of air time were higher and debtors could be called on landlines more easily. This rationale is no longer viable because individuals are using cellular telephones

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

instead of landlines more often and increasingly have no other phone number at which to be contacted.[9] And the costs of calls to cellular telephones have changed since 1991 and can no longer be considered a burden.[10] Consequently, if the TCPA were applied to PRA in the manner suggested by Plaintiff, PRA's ability to effectively collect the debts would be significantly hampered to PRA's financial detriment. (*Id.* ¶ 11.)

### C.   The public interest will not be served by Plaintiff's unsupported demand for a preliminary injunction.

Plaintiff must additionally demonstrate that a preliminary injunction is in the public interest. In making such a determination, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Video Gaming Techs., Inc. v. Bureau of Gaming Control*, 356 F. App'x. 89, 93-94 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 24-25). Plaintiff cannot demonstrate that what he demands is justified in light of the consequences. As stated above, an injunction is completely unnecessary as to Plaintiff. As to the "class" that Plaintiff seeks to certify for a "limited purpose," the impact is altogether different. On that front, Plaintiff argues false platitudes without acknowledging harms to a legitimate business that seeks to do both economic good and assist debtors in improving their credit standing.

For his argument regarding public interest, Plaintiff misstates the actual considerations that exist in this case. Plaintiff is a debtor who has not made, and apparently does not intend to make, payment on an account balance he owes to the Computer Learning Center. (Compl. ¶ 15.) PRA is a publicly traded company that, among other things, collects on debts such as the one owed by Plaintiff. (Stern Decl. ¶¶ 2-3, 6.) PRA pursues a dual goal of reaching fair payment

Robins, Kaplan, Miller & Ciresi L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

---

[9]     *See, e.g.*, Justin Hall, *More landlines getting heave-ho, Survey shows more people relying on cellphones*, THE DAILY IBERIAN, Jan. 10, 2011, *available at* http://www.iberianet.com/news/article_4dc354c5-bcef-5f59-9bc5-28cca7210a9c.html

[10]    *See, e.g.*, Background on CTIA's Semi-Annual Wireless Industry Survey Results-December 1985 to December 2010 (indicating that over the last nine years, the average monthly local bill for cellular phone service has declined from $72.74 in December 1991 to $47.21 in December 2010—a nearly 35% drop *before* adjusting for inflation), available at http://files.ctia.org/pdf/CTIA_Survey_Year_End_2010_Graphics.pdf.

OPPOSITION TO MOTION FOR
                                                                                                                       PRELIMINARY INJUNCTION

solutions for debtors and meeting its shareholders' expectations. (*Id.* ¶¶ 3-4.) In doing so, it is PRA's practice to work with debtors to find the best possible schedule to allow for satisfaction of their obligations. (*Id.*) PRA's services support the functioning of the consumer credit markets and the responsible payment of debtors' obligations to banks, credit unions, consumer and auto finance companies, and retail merchants.[11] (*Id.* ¶¶ 9-10.) The calls that PRA makes to debtors focus on determining the reason for the debtor's default in order to best assess the debtor's situation and help them create a plan for repayment. (*Id.* ¶¶ 3-4.)

These efforts work toward economic goals on macro and micro levels. In assisting debtors in reducing crippling consumer debt, PRA believes that it positively impacts the broader economy by easing debt burden and increasing the economic viability of potential consumers. (*Id.* ¶¶ 9-10.) In assisting debtors in improving their credit rating and their ability to secure additional credit and fully participate in the economy, PRA believes that it positively impacts individual people. (*Id.*) Instead of acknowledging the factual context of this situation, Plaintiff cites to general policy considerations—a parade of horribles that includes public safety and invasion of privacy—that are unrelated to the specific TCPA provisions at issue in this case as applied to debt collectors. (Pl. Mem. p. 14.) The privacy concerns in the context of the TCPA were driven by telemarketers. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, *1421-22, paras. 8-9 (2003). In recognition of this, debt collectors were explicitly exempted from the category of callers who were known to transmit unsolicited advertisements—in other words, telemarketers. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum Opinion and Order, 10 FCC Rcd. 12391, *12399-400, paras. 16-17 (1995).

---

[11]     PRA does not collect the debt on behalf of the original creditor. Instead, PRA purchases the debt from the creditor, allowing that creditor to receive some monetary compensation, and then works to recover what it can from the debtor. (Stern Decl. ¶ 6.)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

Essentially, without a viable claim as to a class and further without likelihood of success on the merits as to either himself or this theoretical class, Plaintiff seeks to halt PRA's efforts to right the wrongs of unpaid consumer debt and help those same debtors get on the road to long-term credit recovery. As such, Plaintiff's motion is not in the public's interest.

**D.      The Balance of the Harms Weighs Heavily Against a Preliminary Injunction.**

Plaintiff can show no legitimate harm in the denial of its motion, and in contrast it would be disrupting legitimate business operations. The balance of harms weighs in PRA's favor.

**III.      A Nominal Bond Is Not Sufficient.**

The security bond's purpose is to protect PRA from economic suffering resulting from the preliminary injunction. *See Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). "Generally, the bond amount should be sufficient 'to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully.'" *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1059 (S.D. Cal. 2006) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982)).  Here this Court should order a higher bond than what Plaintiff proposes because a $2,000 bond is insufficient to protect PRA from the economic loss it will suffer if this Court prohibits PRA from using its Avaya Proactive Contact Dialer. PRA uses its Avaya Proactive Contact Dialer to efficiently collect consumer debt. As stated in its 10-K filing, the Avaya Proactive Contact Dialer is "able to automatically adjust its dialing pace to match changes in the campaign conditions and provide the lowest possible wait times and abandon rates, with the highest volume of outbound calls." (*See* Preston Decl. (Dkt. No. 11) ¶ 2.) Thus, an injunction prohibiting PRA from using its Avaya Proactive Contact Dialer will prevent PRA from efficiently operating its business in the nation's most populated state, resulting in economic loss greater than $2,000.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1

**CONCLUSION**

2

       Plaintiff has not made the requisite showing to establish that a preliminary injunction is

3

warranted. Accordingly, PRA respectfully requests that this Court deny plaintiff's Motion for

4

Preliminary Injunction for the above-stated reasons.

5

6

7       DATED: May 31, 2011

                                        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

8

9                                       By____*s/Jennifer M. Robbins*_____
                                            Edward D. Lodgen

10                                          Julia V. Lee
                                            Christopher W. Madel (*pro hac vice*)
                                            Jennifer M. Robbins (*pro hac vice*)

11

12                                          *Attorneys for Defendant*
                                            *Portfolio Recovery Associates, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION