David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Ethan Preston (263295)
PRESTON LAW OFFICES
21001 North Tatum Boulevard, Suite 1630-430
Phoenix, Arizona 85050
(480) 269-9540 (telephone)
(866) 509-1197 (facsimile)
ep@eplaw.us

*Attorneys for Plaintiff Jesse Meyer, on his own
behalf, and behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT FOR

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE MEYER, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br><br>                    Defendants. | No. 11-cv-01008-AJB-RBB<br><br>Hon. Anthony J. Battaglia<br><br>**PLAINTIFF JESSE MEYER'S REPLY IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION AND LIMITED CLASS CERTIFICATION**<br><br>Date:        June 23, 2011<br>Time:        1:30 p.m.<br>Location:  Courtroom 12, Second Floor<br>                Edward J. Schwartz Courthouse<br>                940 Front Street<br>                San Diego, California 92101-8900 |

1

# TABLE OF CONTENTS

I. PRA Cannot Be Permitted to Continue Violating the TCPA With Impunity.................... 1

II. Meyer Satisfies the Standards for a Preliminary Injunction Under Rule 65...................... 1

    A. PRA's Voluntary Cessation of Its TCPA Violations Does Not Moot Meyer's Injunctive Relief ...................................................................... 2

    B. Meyer's TCPA Claims Will Prevail ....................................................... 3

        1. PRA's Avaya Proactive Contact Dialer Constitutes ATDS Under TCPA's Plain Language ............................................ 4

        2. The FCC's Interpretation of an ATDS Is Consistent with the TCPA's Plain Language; Any Computer Can Be A Random Or Sequential Number Generator ...................................... 5

    C. Money Damages Are Not Adequate To Secure Class Members' TCPA Rights ...................................................................................... 6

    D. Public Interest Favors the Injunction ...................................................... 8

III. Meyer Can Certify A Class Under Rule 23 .......................................................... 8

    A. Meyer Is an Adequate Class Representative........................................... 9

    B. Prior Express Consent Is A Common Issue .......................................... 11

IV. The TCPA's Application to PRA Is Constitutional........................................... 14

V. The Court Should Set Meyer's Proposed Bond........................................... 15

VI. Conclusion ......................................................................................... 16

## Table of Authorities

**Page(s)**

**Federal Cases**

*999 Corp. v. C.I.T. Corp.*
    776 F.2d 866 (9th Cir. 1985) ..................................................................................4

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ..............................................................................2

*Amer. Mfrs. Mut. Ins. Co. v. Sullivan*
    526 U.S. 40 (1999) ..............................................................................................14

*Bd. Regents of State Colleges v. Roth*
    408 U.S. 564 (1972) ............................................................................................14

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
    321 F.3d 878 (9th Cir. 2003) ..............................................................................15

*Cota v. Maxwell-Jolly*
    688 F. Supp. 2d 980 (N.D. Cal. 2010) ..................................................................8

*De Beers Consol. Mines v. United States*
    325 U.S. 212, 65 S.Ct. 1130 (U.S. 1945) ..............................................................9

*Del Campo v. Am. Corrective Counseling Servs., Inc.*
    No. 01-21151, 2008 WL 2038047 (N.D. Cal. May 12, 2008) ................................9

*EEOC v. Federal Exp. Corp.*
    558 F.3d 842 (9th Cir. 2009) ................................................................................2

*FTC v. Affordable Media*
    179 F.3d 1228 (9th Cir. 1999) ..............................................................................3

*FTC v. Neovi, Inc.*
    604 F.3d 1150 (9th Cir. 2010) ..............................................................................2

*G.M. Sign, Inc. v. Finish Thompson, Inc.*
    No. 07-5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ...........................12, 13

*G.M. Sign, Inc. v. Group C Commc'ns, Inc.*
    No. 08-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) ....................................12

*Gene and Gene LLC v. BioPay LLC*
    541 F.3d 318 (5th Cir. 2008) ..............................................................................12

*General Elec. Co. v. Jackson*
    610 F.3d 110 (D.C. Cir. 2010) ............................................................................15

*George W. v. Dep't. of Educ.*
  149 F. Supp. 2d 1195 (E.D. Cal. 2000)........................................................15

*Hamilton v. Voxeo Corp.*
  No. 07-404, 2009 WL 1868541 (S.D. Ohio June 25, 2009) .........................6

*Herrera v. LCS Fin. Servs. Corp.*
  No. 09–02843, 2011 WL 2149084 (N.D. Cal. June 1, 2011) ......................13

*Hicks v. Client Servs., Inc.*
  No. 07-61822, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008) ......................12

*Hinman v. M & M Rental Ctr., Inc.*
  545 F. Supp. 2d 802 (N.D. Ill. 2008) .....................................................12, 13

*In re Activision Sec. Litig.*
  621 F. Supp. 415 (N.D. Cal. 1985) .............................................................10

*In re Computer Memories Sec. Litig.*
  111 F.R.D. 675 (N.D. Cal. 1986).................................................................9

*In re Diasonics Sec. Litig.*
  599 F. Supp. 447 (N.D. Cal. 1984) ..............................................................9

*Johnson v. Couturier*
  572 F.3d 1067 (9th Cir. 2009) ...................................................................15

*Kavu, Inc. v. Omnipak Corp.*
  246 F.R.D. 642 (W.D. Wash. 2007) ........................................................3, 12

*Kirkpatrick v. Ironwood Commc'ns, Inc.*
  No. 05-1428, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006).................11

*Knowles v. Butz*
  358 F. Supp. 228 (N.D. Cal. 1973) ..............................................................9

*Levitt v. Fax.com*
  No. 05-949, 2007 WL 3169078 (D. Md. May 25, 2007)............................12

*LGS Architects, Inc. v. Concordia Homes of Nevada*
  434 F.3d 1150 (9th Cir. 2006) ................................................................2, 3

*Loretto v. Teleprompter Manhattan CATV Corp.*
  458 U.S. 419 (1982)..................................................................................

*Mazza v. Am. Honda Motor Co.*
  254 F.R.D. 610 (C.D. Cal. 2008) ................................................................13

*Mularkey v. Holsum Bakery, Inc.*
 120 F.R.D. 118 (D. Ariz. 1988) ........................................................................10

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*
 246 F.R.D. 621 (C.D. Cal. 2007) .......................................................................13

*Nat'l Org. for Women, Inc. v. Scheidler*
 510 U.S. 249 (1994)...........................................................................................6

*Nollan v. Cal. Coastal Com'n*
 483 U.S. 825 (1987) ..........................................................................................15

*Pacific Rollforming, LLC v. Trakloc Int'l, LLC*
 No. 07-1897, 2007 WL 3333122 (S.D. Cal. Nov. 7, 2007)............................15, 16

*Paldo Sign and Display Co. v. Topsail Sportswear, Inc.*
 No. 08-5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010) ..............................12

*Robinson v. Midland Funding, LLC*
 No. 10-2261, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011)..............................14

*Satterfield v. Simon & Schuster, Inc.*
 569 F.3d 946 (9th Cir. 2009) ........................................................................4, 5

*Staton v. Boeing Co.*
 327 F.3d 938 (9th Cir. 2003) .......................................................................9, 11

*Tovar v. Midland Credit Mgmt.*
 No. 10-2600, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011)............................3, 14

*United States v. Mitra*
 405 F.3d 492 (7th Cir. 2005) ...........................................................................5

*United States v. Parke, Davis & Co.*
 362 U.S. 29 (1960)............................................................................................3

*Walters v. Reno*
 145 F.3d 1032 (9th Cir. 1998) ........................................................................10

*White v. E-Loan, Inc.*
 No. 05-02080, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) .........................10

*Winter v. Natural Resources Defense Council, Inc.*
 555 U.S. 7 (2008). (Def.'s Mem. 4.)...............................................................1, 2

**CALIFORNIA CASES**

*DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*
  176 Cal.App.4th 697 (2009) ..................................................................7

**U.S. CONSTITUTION**

U.S. Const., amend 5. ..................................................................14

**FEDERAL STATUTES**

47 U.S.C. § 227(a)(1)..................................................................3, 4

47 U.S.C. § 227(b)(3) ..................................................................6

47 U.S.C. § 227(b)(3)(B) ..................................................................7

**FEDERAL RULES**

Fed. R. Civ. Pro. 23..................................................................8

Fed. R. Civ. Pro. 23(b)(2) ..................................................................8, 9

Fed. R. Civ. Pro. 23(b)(3) ..................................................................13

Fed. R. Civ. Pro. 36..................................................................4

Fed. R. Civ. Pro. 65..................................................................1

Fed. R. Evid. 609 ..................................................................10

**OTHER AUTHORITIES**

18 FCC Rcd. 14014, 2003 WL 21517853 (July 3, 2003), *available at*
  http://hraunfoss.fcc.gov/edocs_public/ ..................................................................1, 3, 6

23 FCC Rcd. 559, 2008 WL 65485 (Jan. 4, 2008), available at
  http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf ..................................................................14

Alba Conte and Herbert B. Newberg, 3 *Newberg on Class Actions* § 9:45 (4th ed. 2010)..................................................................8

Alfred Blumstein and Kiminori Nakamura, Potential of Redemption in Criminal
  Background Checks 8, 23-24 (November 2010), *available at*
  http://www.ncjrs.gov/pdffiles1/nij/grants/232358.pdf..................................................................10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991, 2003 Report and Order*
  CG Docket No. 02-278, FCC 03-153 .......................................................... passim

*In the Matter of Rules and Regulations Implementing the Telephone Consumer*
   *Protection Act of 1991, Request of ACA International for Clarification and*
   *Declaratory Ruling*
   CG Docket No. 02-278, FCC Docket No. 07-232...................................................14

## I.      PRA Cannot Be Permitted to Continue Violating the TCPA With Impunity

This case is about whether consumers have real rights under the TCPA. Meyer filed a class action lawsuit to stop PRA's violations of the TCPA. In a space of two months after Meyer filed his lawsuit, PRA continued to call 46,657 cellular telephone numbers with California area codes without consent. (Parisi Decl. ¶¶2-4.) Towards the end of its Opposition, PRA asserts that Meyer "argues false platitudes without acknowledging harms to a legitimate business that seeks to do both economic good and assist debtors in improving their credit standing." (Def.'s Opp. 22.) PRA's underlying contention seems to be that the collection of consumer debts justifies its ongoing violation of the TCPA on a massive scale. Certainly, PRA does not dispute that it violates the TCPA under the FCC's interpretation in *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 133, 18 FCC Rcd. 14014, 14093, 2003 WL 21517853, *46 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs_public/ attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").[1] Further, PRA's Do Not Call policies and its securities filings show that PRA knows that calling cellular telephones without permission at least implicates the TCPA. (Dkt. #11-3, ¶¶2, 5.) PRA has simply decided the economics of calling cellular telephones without consent outweighs the costs of TCPA liability.

It is clear that payments to settle sporadic TCPA actions are just a cost of doing business for PRA; in other words, the TCPA's statutory damages serve merely as the price of PRA's license to flout the rights of consumers under the TCPA. Because the statutory damages have failed to deter PRA, injunctive relief is necessary.

## II.     Meyer Satisfies the Standards for a Preliminary Injunction Under Rule 65

PRA argues that Meyer cites the "wrong standard" for preliminary injunctions, contending that it was abrogated by *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). (Def.'s Mem. 4.) The Ninth Circuit has concluded otherwise:

> *Winter* did not . . . explicitly discuss the continuing validity of the "sliding scale"

---

[1]      Rather, PRA argues that the *2003 Report and Order* is an impermissible interpretation of the TCPA. (Def.'s Opp. 19-20.) As set forth below, this argument is wrong.

approach to preliminary injunctions employed by this circuit and others. Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. [Thus,] a preliminary injunction could issue where the likelihood of success is such that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." . . . In other words, "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements [public interest and the likelihood of irreparable harm].

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.2003)). This standard is known as the "'serious questions' approach to preliminary injunctions," and the Ninth Circuit has expressly held that it survives *Winter*. *Id*. at 1131-32. As Meyer satisfies the other elements of the preliminary injunction standard, it is sufficient for him to show that there are "serious questions going to the merits" of his TCPA claim.[2]

## A.   PRA's Voluntary Cessation of Its TCPA Violations Does Not Moot Meyer's Injunctive Relief

PRA argues that its "voluntary cessation" renders "Plaintiff's motion for a preliminary injunction functionally moot." (Def.'s Opp. 2.) The Ninth Circuit has squarely rejected the proposition that "any defendant [can] moot a preliminary injunction appeal by simply representing to the court that it will cease its wrongdoing." *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1154 (9th Cir. 2006). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *EEOC v. Federal Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2009) (citation omitted). "If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id*. (same). Rather, "the party asserting mootness" bears a "heavy burden of persuading the court" that the party's voluntary conduct has mooted injunctive relief: this "stringent" standard requires that PRA show that it is "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur[.]" *Id*. (same). Meyer explicitly told PRA that it was calling his

---

[2]   In an aside, PRA claims that Meyer seeks a mandatory injunction, rather than a prohibitory injunction (so that a higher standard is applicable to Motion). (Def.'s Opp. 4.) Of course, this is wrong; Meyer is asking the Court to stop PRA's illegal calls. A prohibitory injunction "forbids or restrains an act," while mandatory injunction "orders an affirmative act or mandates a specified course of conduct." *FTC v. Neovi, Inc.*, 604 F.3d 1150, 1160 n.10 (9th Cir. 2010) (quoting Black's Law Dictionary 855 (9th ed. 2009)).

cellular telephone, and directly instructed PRA to stop: despite this, PRA continued to call until after it was served with this lawsuit. (Dkt. #11-2, ¶¶5-7.) Given this conduct, PRA's bare assertion that it has decided not to call Meyer again – which is only made *after* Meyer filed a motion for preliminary injunction – cannot carry its "stringent" burden of proof. *Cf. United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960) (trial court should not deny relief "by lightly inferring an abandonment of the unlawful activities from a cessation which seems timed to anticipate suit"). A defendant's assertion that it will not violate the TCPA does not moot injunctive relief where the defendant "did not make that promise before plaintiff filed this lawsuit[;] plaintiff is not required to take defendant at its word." *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 649 (W.D. Wash. 2007).[3]

### B.   Meyer's TCPA Claims Will Prevail

PRA appears to concede both that the FCC's interpretation of the term "automatic telephone dialing system" ("ATDS") under 47 U.S.C. § 227(a)(1) includes predictive dialers, and that its Avaya Proactive Contact Dialer are predictive dialers. (Def.'s Opp. 19-20.) In any event, no one can gainsay that the FCC has held that predictive dialers constitute ATDSs: "the Commission finds that **a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress.**" *2003 Report and Order*, FCC 03-153, ¶ 133, 18 FCC Rcd. at 14093, 2003 WL 21517853 at *46. Likewise, the record is clear that the Avaya dialers are predictive dialers, by PRA's own description. (*See*, *e.g.*, Dkt. #11-3, ¶2.) This Court has held that "[t]he FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors." *Tovar v. Midland Credit Mgmt.*, No. 10-2600, 2011 WL 1431988, *3 (S.D. Cal. Apr. 13, 2011). Even PRA does not contest that Meyer is likely to prevail on his claim under the FCC's rulings.

---

[3]   *See also LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1154 (9th Cir. 2006); *FTC v. Affordable Media*, 179 F.3d 1228, 1238 (9th Cir. 1999) (same).

### 1. PRA's Avaya Proactive Contact Dialer Constitutes ATDS Under TCPA's Plain Language

PRA appears to argue that, despite the *2003 Report and Order*, its Avaya dialers do not meet the definition of an ATDS in 47 U.S.C. § 227(a)(1) because they are not currently configured to call random or sequential numbers. (Def.'s Opp. 17-20.) The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Ninth Circuit has affirmed that the material question is not the equipment's current configuration, but its *capacity*:

> When evaluating the issue of whether equipment is an ATDS, the [TCPA's] clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." **Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.**

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (italics in the original, emphasis in bold). The material dispute before the Court is whether the Avaya dialers have the capability of storing and calling random or sequential numbers – *not* whether PRA is motivated to use them in that manner. (*Cf*. Cherkasly Decl. ¶ 11.)

PRA's Avaya dialers can store and dial computer generated lists of numbers. (Cf. Dkt. #11-3, ¶¶4, 6.) PRA cannot walk away from its judicial admission that the Avaya dialers can store and dial lists of numbers. (Cf. Dkt. #11-3, ¶4 with *999 Corp. v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) ("[e]vidence inconsistent with a Rule 36 admission is properly excluded")). Hence, PRA must argue that the Avaya dialers cannot store and dial lists of *random or sequential* numbers. (Def.'s Opp. 18-19.) But PRA concedes that the Avaya dialers have the capacity to do so, and even provides a step-by-step guide for reconfiguring the Avaya dialers to dial random or sequential numbers. (Cherkasly Decl. ¶ 10.) There is no need to even rely on the FCC's interpretations – under the record before the Court, the TCPA's language is broad enough to cover PRA's Avaya dialers.

**2.    The FCC's Interpretation of an ATDS Is Consistent with the TCPA's Plain Language; Any Computer Can Be A Random Or Sequential Number Generator**

PRA suggests that the *2003 Report and Order*'s inclusion of predictive dialers within the statutory definition of the TCPA defies Congressional intent. (Def.'s Opp. 19-20.) There is a two-step process for reviewing the *2003 Report and Order*. First, the Court considers whether "the intent of Congress is clear [because] the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Satterfield*, 569 F.3d at 952 (quoting *Chevron USA Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). Second, if a statute is "silent or ambiguous," the Court must defer to the agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id*. (quoting *Chevron*, 467 U.S. at 842-43). Under the TCPA's plain language, the definition of an ATDS applies to predictive dialers. *Id*. at 953. Even if there were some ambiguity, there is no basis to conclude that the *2003 Report and Order* is arbitrary, capricious, or manifestly contrary to the TCPA.

Again, PRA does not dispute that its Avaya dialers accept computer-generated lists of telephone numbers, but argues the dialers would have to be reconfigured to dial lists of *random or sequential* numbers. The underlying point seems to be that general-purpose computers cannot constitute "random or sequential number generator[s]." But it is intuitive that any computer can generate random or sequential telephone numbers, and even PRA concedes the point. (Cherkasly Decl. ¶ 18 ("a competent computer programmer could write computer code that would allow something as basic as a personal electronic device to store or produce telephone numbers using a random or sequential number generator").) By referencing random or sequential number generators, Congress used broad language that includes general-purpose computers. Legislators "know that complexity is endemic in the modern world and that each passing year sees new developments. That's why they write general statutes rather than enacting a list of particular forbidden acts. And it is the statutes they enacted – not the thoughts they did or didn't have – that courts must apply." *United States v. Mitra*, 405 F.3d 492, 495 (7th Cir. 2005) (applying computer fraud statute to computerized radio system). Even if there were some indication that Congress did not expect general computers to be random or sequential number generators, the

fact that a statute is "applied in situations not expressly anticipated by Congress does not demonstrate ambiguity [but] breadth." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 262 (1994). Hence, it was reasonable for the FCC to find that

> It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. . . . The basic function of [autodialers], however, has not changed–the *capacity* to dial numbers without human intervention. . . . [T]o exclude from [the TCPA's] restrictions **equipment that use predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result**. [Calls to] wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages. [T]he purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" **is to ensure that the prohibition on autodialed calls not be circumvented.**

*2003 Report and Order*, FCC 03-153, ¶ 132-33, 18 FCC Rcd. at 14092-93, 2003 WL 21517853 at *46. There is no support for PRA's artificially narrow definition of an ATDS. It does not comport with the statutory language, and it conflicts with the *2003 Report and Order*: its only purpose is to exempt PRA from liability.

### C.   Money Damages Are Not Adequate To Secure Class Members' TCPA Rights

PRA's argues that statutory damages are sufficient for Meyer: "Congress predetermined that $500 per violation will adequately compensate plaintiffs and deter violations of the TCPA." (Def.'s Opp. 6.) In fact, the TCPA provides for actions "based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation," actions for damages, or "*both such actions*." 47 U.S.C. § 227(b)(3) (emphasis added). Clearly, the availability of statutory damages under the TCPA cannot deprive Meyer of an injunctive remedy, because Congress expressly provided that Meyer could pursue both such remedies:

> the refusal of injunctive relief when damages are available is based on the traditional distinction between law and equity. Where, as here, the Congress has created an equitable remedy and allowed a plaintiff to choose either injunctive relief, damages, or both, the Court doubts its authority to deny injunctive relief because a damages remedy might by theoretically adequate.

*Hamilton v. Voxeo Corp.*, No. 07-404, 2009 WL 1868541, *2 (S.D. Ohio June 25, 2009) (TCPA action). The TCPA's provision of statutory damages cannot be used to frustrate the Congressional intent provide Meyer with both statutory damages and injunctive relief. Indeed,

the record is clear that statutory damages will not deter PRA from violating the TCPA. PRA called Meyer four times before he filed suit, even though it was told not to do so. (Dkt. #11-2, ¶¶5-7.) Further, PRA called 46,657 cellular telephone numbers with California area codes, which it had obtained via skip-tracing in February and March 2011 – even after Meyer brought a class action lawsuit to stop this practice. (Parisi Decl. ¶4.)

PRA asserts that its invasion of Meyer's "right to exclude others from using his cell phone" does not constitute irreparable harm because PRA's TCPA violations do "not rise to the same level as infringement of legally protected intellectual-property rights." (Def.'s Opp. 8.) Of course, Meyer's right to exclude from his telephone is also "legally protected" by the TCPA: the "power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). The magnitude of PRA's invasion does not bar injunctive relief. "Irreparable harm includes that species of damages, *whether great or small, that ought not to be submitted to on the one hand or inflicted on the other*." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal.App.4th 697, 721 (2009) (emphasis in original, citation and punctuation omitted). In effect, PRA is arguing that the legal rights of large corporations actually matter so they can pursue injunctive relief – but the same is not true for consumers.

PRA also tries to manufacture an argument that its actions did not violate Meyer's privacy by distorting statements made in good faith effort to resolve a discovery dispute. (Def.'s Opp. 7 & n.3.) In their discovery dispute, the parties dispute whether Meyer can redact portions of the telephone bills produced to PRA to protect the privacy interests of third parties. PRA indicates it plans to depose the third parties using Meyer's family plan, on the putative basis that they may have evidence related to Meyer's allegations of "actual damages." But the TCPA's damages remedy is limited to the option between statutory damages of $500 per violation or recovery of "**actual monetary loss**" from a TCPA violation. *Cf.* 47 U.S.C. § 227(b)(3)(B) (emphasis added). Meyer does not dispute that his actual monetary loss is well under $500 per violation. As his counsel indicated, Meyer's "actual damages" are therefore irrelevant because he cannot recover damages for emotional distress under the TCPA. That does not mean that PRA

did not invade his privacy rights, and the fact that Meyer cannot recover such damages bolsters, rather than dampens, his claim for injunctive relief.

### D.    Public Interest Favors the Injunction

PRA contends that Meyer has failed to "acknowledg[e] the factual context of [the] situation," that PRA "assist[s] debtors in reducing crippling consumer debt," and that the Motion will hamper PRA's "efforts to right the wrongs of unpaid consumer debt." (Def.'s Opp. 22.) This is, again, very close to arguing that debt collection justifies willful violations of the TCPA. The gist of PRA's argument is that public interest will suffer if it cannot communicate with consumers to help them pay off their alleged debts. This is a disingenuous argument; the proposed injunction does not stop PRA from collecting debt from willing consumers. PRA can still contact consumers by mail, and can call them manually, just like other debt collectors which abide by the law. If consumers do not respond to these methods, it strongly suggests that consumers do not really want PRA's purported "assistance" after all, but would prefer that their rights under the TCPA are effectively enforced.

### III.    Meyer Can Certify A Class Under Rule 23

Defendant's contention that there is "no legal foundation" for a preliminary injunction is just wrong. "Preliminary injunctive relief on behalf of a class is freely awarded on a classwide basis. The court may conditionally certify the class or otherwise award a broad preliminary injunction, without a formal class ruling, under its general equity powers." Alba Conte and Herbert B. Newberg, 3 *Newberg on Class Actions* § 9:45 (4th ed. 2010) (citing cases). "District courts are empowered to grant preliminary injunctions regardless of whether the class has been certified." *Cota v. Maxwell-Jolly*, 688 F. Supp. 2d 980, 991 (N.D. Cal. 2010) (punctuation, citation omitted).

In any event, PRA misconstrues Rule 23(b)(2). Meyer need only show that PRA has acted "on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Meyer does not need to seek final injunctive relief at this moment, but that the relief sought for the class would be

appropriate as a final injunction. This is easily done: a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 1134 (U.S. 1945). Courts can, and often do, certify classes for preliminary injunctive relief. *See also Knowles v. Butz*, 358 F. Supp. 228, 230 (N.D. Cal. 1973) (discussing order "granting a preliminary injunction, [and certifying] action as a proper one to be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure").

### A.   Meyer Is an Adequate Class Representative

Certainly Meyer regrets the conduct that led to his convictions in 1998 and 2001, but PRA makes no showing that these convictions actually pose any threat to the class. Adequacy requires the Court consider whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class[.]" *Staton v. Boeing Co.*, 327 F.3d 938, 957-959 (9th Cir. 2003). PRA focuses on Meyer's convictions to serve its own interests, not those of the class. PRA argues Meyer is an inadequate class representative because it "prefer[s] not to be successfully sued by anyone"; its arguments are "a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *In re Diasonics Sec. Litig.*, 599 F. Supp. 447, 451 (N.D. Cal. 1984) (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017 (1982)).[4] "Character attacks made by opponents to a class certification motion" have "generally not been sympathetically received" unless there is "a showing of a conflict of interest." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986). "A prior conviction is not *per se* disqualifying. . . . [U]nsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation." *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. 01-21151, 2008 WL 2038047, *4 (N.D. Cal. May 12, 2008)

---

[4]   *See also In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) ("the source of objections to the adequacy of class representation must be considered . . . [there is noted] irony in strenuous objections made by defendants to the adequacy of plaintiff class representatives").

(quoting *Byes v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421, 427 (E.D. La. 1997)). Hence, a class representative's guilty plea to a battery charge was "irrelevant" to his adequacy "since it does not implicate [his] ability to act as a fiduciary or demonstrate any antagonism with class members." *In re Activision Sec. Litig.*, 621 F. Supp. 415, 429 (N.D. Cal. 1985). Likewise, a class representative was not inadequate because he pled guilty to aiding and abetting theft by a bank employee, and failed to file his income tax returns or to pay state sales taxes. *Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118, 121-22 (D. Ariz. 1988). These matters were "only marginally related to a more relevant question": would the class representative "vigorously represent the interests of the class?" *Id.* at 122. *See also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (class representatives who admitted to document fraud in immigration civil rights case were not inadequate, inadequacy argument "particularly weak in light of the fact [of] the class representatives" success).

Similarly, the Court should take into account Meyer's conduct during the long period between the 1998 and 2001 convictions and the present day. *Cf.* Fed. R. Evid. 609. Meyer was released in 2003, graduated from the University of California at Berkeley in 2009 (while working), and has been self-sufficient since.[5] Where "[t]he last of [a class representatives] convictions occurred almost 30 years ago," it is "a stretch to say that they remain strongly probative of a lack of personal integrity." *White v. E-Loan, Inc.*, No. 05-02080, 2006 WL 2411420, *3 (N.D. Cal. Aug. 18, 2006). Conversely, where a class representative admits to fraudulent conduct in a securities case that occurred less than a year before the representative's own securities fraud action was filed, he may be inadequate. *Id.* (citing *In re Proxima Corp. Sec. Litig.*, No. 93-1139, 1994 WL 374306, *17-18 (S.D. Cal. May 3, 1994). A class representative can be adequate despite several misdemeanor convictions and a conviction for felony theft

---

[5]     Meyer was first arrested when he was 21, and his offenses were property and drug-related. As a purely statistical matter, the risk of recidivism for someone with Meyer's profile "decline[d] and intersect[ed] the level of the general population of the same age," at the latest, 6.1 years from the 2001 conviction. Alfred Blumstein and Kiminori Nakamura, Potential of Redemption in Criminal Background Checks 8, 23-24 (November 2010), *available at* http://www.ncjrs.gov/pdffiles1/nij/grants/232358.pdf. *Cf. id.* at 6 (citing other studies which shows that, among "felons who stayed free of crime for 10 years after the original conviction, only 3.3 percent were reconvicted within the next 10 years")

eleven years before. *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. 05-1428, 2006 WL 2381797, *6 (W.D. Wash. Aug. 16, 2006). "A criminal record does not automatically disqualify a putative class representative," where the class representative's "criminal history is almost a decade behind him, and there is no indication that his conviction will have a significant impact on his ability to represent class members." *Id.*

PRA presents no evidence that Meyer's past convictions pose any kind of present conflict with the class. The most its counsel can do is suggest that Meyer might have redacted his cellular telephone bills to conceal ongoing criminal conduct. (Def.'s Opp. 13 n. 6.) Meyer addresses just two of the many problems with this baseless and inflammatory allegation.[6] First, and most importantly, PRA does not show conflicts of interest with other class members or that Meyer cannot prosecute this action vigorously. *Cf. Staton*, 327 F.3d at 957-959. Meyer's testimony is not even at issue in this case: PRA has already admitted it called Meyer (and Meyer has produced telephone bills bearing that fact out), it bears the burden of proof on prior express consent, and the evidence concerning its Avaya dialers are within its control. Second, PRA is not being straightforward about the some of details on this issue. For instance, PRA fails to mention that Meyer has *repeatedly* offered to have the Court review Meyer's bills *in camera* to help resolve the parties' discovery dispute. (Parisi Decl. ¶5.) PRA's discussion of the 1998 and 2001 convictions also distorts the record.[7]

## B.   Prior Express Consent Is A Common Issue

PRA argues that TCPA claims can never be certified because consent is inherently an individualized issue. This is incorrect: TCPA violations "are not *per se* unsuitable for class

---

[6]   One has to wonder if PRA has thought this particular argument all the way through. How exactly would PRA deduce criminal activity from a list of telephone numbers? This is simply rank (and baseless) speculation.

[7]   PRA cites Meyer's discovery responses as the basis for its representations about Meyer's criminal history, but its representations do not reflect the content of Meyer's responses. For instance, Meyer's responses do not indicate that his 1998 conviction was for methamphetamine possession, or that he was sentenced to five years for the 2001 conviction. (Cf. Def.'s Opp. 1-2 (citing Robbins Decl. Ex. A) *with* Dkt. #22-2 at 8 (Form Interrog. 2-8.)) (In fact, Meyer was released in 2003 and obtained his cellular telephone number shortly thereafter. See Dkt. #11-2, ¶3.) While Meyer's responses were based on his best recollection and they might be inexact, if PRA's representations are based on more accurate records, then it should cite those, rather than misrepresenting Meyer's responses.

resolution"; many cases offer the "possibility of class-wide proof on the question of consent."*Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 & n.8 (5th Cir. 2008). Courts have consistently focused on one factor as determining whether to certify a TCPA class: did the defendant obtain the class members' telephone numbers from a uniform source? PRA had a uniform method for obtaining class member's telephone numbers (i.e., skip-tracing) which presents a common set of facts for each class member. (Cf. Dkt. #11-3, ¶3.) Class certification is therefore appropriate. *Cf.*, *e.g.*, *Paldo Sign and Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959, 2010 WL 4931001, *2 (N.D. Ill. Nov. 29, 2010) (class certified where defendant "purchased its fax numbers from a commercial source"); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953, 2009 WL 2581324, *5 (N.D. Ill. Aug. 20, 2009) (class certified where defendant sent faxes "to anonymous third party fax lists procured by" contractor); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008) (class certified where defendant obtained class members' numbers from single "leads" list); *Kavu*, 246 F.R.D. at 647 (class certified where question as to whether class members' inclusion in database constituted express permission to receive faxed advertisements was "common issue").

Conversely, PRA's cases must be distinguished because the rulings in PRA's cases depend on the fact there was no such common source of class member telephone numbers. Cf. *Gene and Gene LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (class treatment improper because defendant "culled fax numbers from a variety of sources over a period of time, such that class-wide proof of consent is not possible under the theory advanced in *Kavu*"); *Hicks v. Client Servs., Inc.*, No. 07-61822, 2008 WL 5479111, *7 (S.D. Fla. Dec. 11, 2008) (distinguishing *Kavu* on the basis that class members' numbers were not included "in the single database from which the defendant obtained their numbers"); *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, *3-7 (D. Md. May 25, 2007) (refusing to certify a class because of insufficient information about the database from which class member numbers were obtained).

Moreover, given that PRA commonly obtained class members' telephone numbers via skip-tracing, the possibility that PRA might otherwise prove consent does not prevent class certification. *See G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-4521, 2010 WL 744262, *3

(N.D. Ill. Feb. 25, 2010) ("mere possibility that [defendant] may be able to assert [consent]

defense against some class members does not prevent the identification of an ascertainable class

now"); *Finish Thompson*, 2009 WL 2581324, *5; *Hinman*, 545 F. Supp. 2d at 807 ("possibility

that some of the individuals on the list may separately have consented to the transmissions at

issue is an insufficient basis for denying certification"). "Commonality [is] generally met where,

as here, a defendant engages in a standardized course of conduct *vis-a-vis* the class members, and

plaintiffs' alleged injury arises out of that conduct." *Hinman*, 545 F. Supp. 2d at 806. Where a

TCPA defendant obtains cellular telephone numbers from a uniform source and calls them "*en*

*masse*," "the question of consent may rightly be understood as a common question." *Id*. at 807.

Ninth Circuit law is in accord, even with respect to class certificationunder Rule 23(b)(3):

> "When common questions present a significant aspect of the case and they can be
> resolved for all members of the class in a single adjudication, there is clear
> justification for handling the dispute on a representative rather than on an
> individual basis." . . . When one or more of the central issues in the action are
> common to the class, the action may be considered proper under Rule 23(b)(3)
> even though other important matters will have to be tried separately, such as
> damages or *some affirmative defenses peculiar to some individual class members*.

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621,

634 (C.D. Cal. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998);

citing *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244

F.3d 1152, 1163 (9th Cir. 2001); emphasis added).[8] Because PRA did not obtain consent to call

class members from its skip-tracing processes, lack of consent is a generally-applicable fact and

the class can be certified: this does not change with the presence of individualized consent

defenses that PRA might be able to present. At most, these defenses might require certification

of subclasses.[9]

---

[8]  *See also Herrera v. LCS Fin. Servs. Corp.*, No. 09–02843, 2011 WL 2149084, *13 (N.D. Cal. June 1, 2011) ("fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification," quoting *Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) ("the presence of individual issues of compliance with the statute of limitations here does not defeat the predominance of the common questions")); *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 619-20 (C.D. Cal. 2008) (requirement that common facts "predominate" does not mean common facts must be "determinative").

[9]  PRA further argues that consent could be given in any communication between consumers and creditors, so evidence of consent might be found in any of "PRA's records, as well as the original creditor's records that are not in PRA's possession." (Def.'s Opp. 15-16.) PRA is

## IV.    The TCPA's Application to PRA Is Constitutional

PRA's Due Process argument appears to simply rehash its contention that the TCPA does not apply to debt collectors in vain. However, as discussed more fully in Plaintiff's Opposition to PRA's Motion to Stay (Dkt. #23), the FCC and this Court have made it clear that the TCPA does in fact apply to debt collectors:

> The FCC has already issued a declaratory ruling stating debt collectors who make autodialed or prerecorded calls to a wireless number are responsible for any violation of the TCPA. . . .

*Robinson v. Midland Funding, LLC*, No. 10-2261, 2011 WL 1434919, *5 (S.D. Cal. Apr. 13, 2011). *See also Tovar*, 2011 WL 1431988, *3. PRA makes no argument that the restrictions under the TCPA impede its business any more than any other debt collector.

Rather, PRA contends that the injunction would violate its due process rights under the Fifth Amendment, because "PRA's ability to effectively collect the debts would be significantly hampered to PRA's financial detriment." (Def.'s Opp. 22.) The Fifth Amendment provides that "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.' Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citations omitted). A protectable property interest requires "more than [PRA's] abstract need or desire," or its "unilateral expectation"; rather PRA must show "a legitimate claim of entitlement to" its business model (i.e., calling cellular telephones without prior express consent). *Bd. Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The expectation of revenue from its current use of the Avaya dialers does not constitute such a property interest: even if the TCPA "deprive[d]

---

incorrect as a matter of law; "prior express consent is deemed to be granted only [(1)] if the wireless number was *provided by the consumer to the creditor*, and [(2)]] that such number was *provided during the transaction that resulted in the debt owed*." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, FCC Docket No. 07-232, ¶ 10, 23 FCC Rcd. 559, 565, 2008 WL 65485, *3 (Jan. 4, 2008), available at http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf (emphasis added). The only way for PRA to prove effective prior express consent is to show the consumer provided consent (1) to the creditor (2) during the transaction in which the debt arose.

[PRA] of the full value of" its consumer receivables, it would not violate a cognizable property interest. *Nollan v. Cal. Coastal Com'n*, 483 U.S. 825, 857 (1987). "The interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests." *Id.* (citation, punctuation omitted). *Cf. General Elec. Co. v. Jackson*, 610 F.3d 110, 119-21 (D.C. Cir. 2010) (corporation's stock price is not a protectable property interest). Even if PRA's current business model were a protectable property interest, it would still need to show that the TCPA deprived it of "constitutionally sufficient notice and an opportunity to be heard." *George W. v. Dep't. of Educ.*, 149 F. Supp. 2d 1195, 1203 (E.D. Cal. 2000). PRA has been provided with notice and opportunity to be heard throughout this lawsuit.

Meyer does not dispute that, as is often the case, compliance with the law may require PRA to alter its current method of doing business. However, that fact cannot operate as justification for illegal activity, nor does it deprive PRA of due process.

## V.     The Court Should Set Meyer's Proposed Bond

PRA argues that Meyer's proposed bond is insufficient because it will not protect PRA from "the economic loss it will suffer if this Court prohibits PRA from using its Avaya Proactive Contact Dialer." (Def.'s Opp. 24.) PRA provides no evidence of this alleged economic loss (and, in particular, no evidence that PRA cannot communicate with consumers via mailing and manually dialed telephone calls), and does not even suggest what sort of bond would be sufficient. The Court's discretion in setting the bond extends to "dispens[ing] with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). *See also Pacific Rollforming, LLC v. Trakloc Int'l, LLC*, No. 07-1897, 2007 WL 3333122, at *3 (S.D. Cal. Nov. 7, 2007) ("[t]he bond amount may be set at zero if there is no evidence the party will suffer damages from the injunction"). Further, "*the party affected by the injunction* [*has an*] *obligation* [*to*] *present*[] *evidence that a bond is needed* [in the first place], so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hill*s, 321 F.3d 878, 883 (9th Cir. 2003) (emphasis supplied). PRA presents no evidence of its purported economic losses. Where it is "unclear how

[a party bound by a preliminary injunction] calculate[s] [a proposed] bond amount," and unclear how much money would be involved, it is appropriate to defer to the movant's proposed bond. *Pacific Rollforming*, 2007 WL 3333122, at *3. As PRA does not even calculate a proposed bond amount, let alone present the basis for such calculation, the Court should defer to Meyer's proposed bond.

**VI.     Conclusion**

The proposed preliminary injunction balances appropriate protection of the privacy interests of Meyer and the other recipients of PRA's calls, while minimizing the harm to PRA's business to what is required to comply with the TCPA. The Court should, respectfully, grant the proposed injunction.

Dated: June 7, 2010                    By: _____
                                                                s/David C. Parisi
                                                       David C. Parisi (162248)
                                                       Suzanne Havens Beckman (188814)
                                                       PARISI & HAVENS LLP
                                                       15233 Valleyheart Drive
                                                       Sherman Oaks, California 91403
                                                       (818) 990-1299 (telephone)
                                                       (818) 501-7852 (facsimile)
                                                       dcparisi@parisihavens.com
                                                       shavens@parisihavens.com

                                                       Ethan Preston (263295)
                                                       PRESTON LAW OFFICES
                                                       21001 North Tatum Blvd., Suite 1630-430
                                                       Phoenix, Arizona 85050
                                                       (480) 269-9540 (telephone)
                                                       (866) 509-1197 (facsimile)
                                                       ep@eplaw.us

                                                       *Attorneys for Plaintiff Jesse Meyer, on his*
                                                       *own behalf, and behalf of all others*
                                                       *similarly situated*