UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE MEYER, an individual on his own behalf and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, a Delaware limited liability company,<br><br>        Defendant. | Case No.: 11cv1008 AJB (RBB)<br><br>Order Granting Motion for Preliminary Injunction and Conditional Class Certification and Denying Motion to Stay<br><br>[Doc. Nos. 11 and 14] |

Currently before the Court are the Plaintiff's motion for preliminary injunction and conditional class certification, [Doc. No. 11], and the Defendants' motion to stay, [Doc. No. 14]. A hearing on these motions was held on the record on June 23, 2011 before Judge Battaglia.[1] For the reasons set forth below, the motion for preliminary injunction and conditional class certification, [Doc. No. 11], is hereby GRANTED and the motion to stay, [Doc. No. 14], is hereby DENIED.

## *Background*

Plaintiff, Jesse Meyer, a California resident, brought a putative class action against Portfolio Recovery Associates ("PRA"), a debt collector, alleging that PRA violated the Telephone Consumer

---

[1] At the conclusion of the hearing the Court stated that it was going to deny the motion for preliminary injunction and incorporate the record into a written order to follow to complete that ruling for later review. *See* Doc. No. 39 at 32. In preparing the order and upon further consideration of the record, arguments and case law, the Court has reached a different conclusion for the reasons set forth herein.

Protection Act ("TCPA") by using an automatic telephone dialing system ("ATDS"), PRA's Avaya Proactive Contact Dialer , to place non-emergency calls to cellular telephones with California area codes, without prior express consent.

### *Discussion*

The two motions currently before the Court are the Plaintiff's motion for preliminary injunction and conditional class certification, [Doc. No. 11], and the Defendants' motion to stay, [Doc. No. 14].

*I. Motion for Preliminary Injunction and Provisional Class Certification*

The Plaintiff's Complaint alleges that PRA called his cellular telephone in a manner that violated the Telecommunications Privacy Act's ("TCPA"). 47 U.S.C. § 227(b)(1)(A)(iii). (Pl.'s Compl. ¶¶ 15-20.) The Telecommunications Privacy Act's ("TCPA") states that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . .
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . .
> 47 U.S.C. § 227(b)(1).

As such, the Plaintiff must demonstrate that (1) PRA called a cellular telephone number (2) using an ATDS, (3) without the express prior consent of the recipient. Under the TCPA, Congress created an equitable remedy that allows a plaintiff to choose injunctive relief, damages, or both. 47 U.S.C. § 227(b)(3).

The Plaintiff seeks a preliminary injunction that restrains PRA from violating the TCPA by using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with a California area code, which numbers PRA obtained via skip-tracing. Plaintiff also seeks provisional class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) for the limited purpose of obtaining the preliminary injunction. Plaintiff's proposed class consists of all persons using a cellular telephone number which (1) PRA did not obtain either from a creditor or from the Injunctive Class member; and (2) has a California area-code; or (3) where PRA's records identify the Injunctive Class member as residing in California ("Injunctive Class").

This Court cannot, however, grant relief on a class-wide basis without first addressing certification of the class.[2] In the absence of class certification, the preliminary injunction may properly cover only the named plaintiff and should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff.[3] The Plaintiff bears the initial burden of demonstrating that Rule 23's requirements have been met.[4]

### A. Class Certification Requirements

#### 1. Rule 23(a) Requirements

A class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Plaintiff seeks certification of the class defined as:

> All natural persons residing in California at the time this Complaint is filed who received one or more telephone calls from Defendants or their agents to such person's cellular telephone number, where Defendants did not obtain such cellular telephone number from a voluntary transaction

---

[2] *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Yaffe v. Powers*, 454 F.2d 1362, 1364-65 (1st Cir.1972); *Tape* Head Co. v. RCA Corp., 452 F.2d 816, 819 (10th Cir.1971) (per curiam); *see also Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1, 96 S.Ct. 1551, 1554 n.1, 47 L.Ed.2d 810 (1976) (without certification, an action is not properly a class action); *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (per curiam) (class action becomes moot if compliance with rule 23(c) has been inadequate and action has become moot with respect to individual plaintiffs-representatives); *cf. Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480-81, 98 S.Ct. 2451, 2453-54, 57 L.Ed.2d 364 (1978) (no appeal under § 1291(a)(1) permitted for denial of class certification because only effect is to narrow scope of relief available).

[3] *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir.2011); *Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir.1984); *see* Schwarzer, Tashima and Wagstaffe, Fed. Civ. P. Before Trial, § 10:773 at 10–116 (TRG 2008) (Plaintiff may move for class-wide relief before moving to certify the class, however, such injunctive relief is discretionary and "[c]ourts often refuse such relief until after the class is certified, because until then it may be difficult to determine the extent of benefits to the class and consequences to defendant if an injunction is granted." ); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir.1996) (recognizing that "injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification"); *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir.1984) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

[4] *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal.1994); *see also, Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975) (noting that because class certification inevitably involves some speculation, plaintiff need only present "sufficient information [for the court] to form a reasonable judgment"), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

between the person and some third party that assigned or sold any debt or claim resulting from such transaction to Defendants ('the Class"). *See* Complaint, Doc. No. 1-2, ¶ 21.

### *a. Numerosity*

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all of the class members would be impracticable. Fed. R. Civ. P. 23(a). "Impracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964) (quoting *Advertising Specialty Nat. Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir.1956)).

PRA has provided Plaintiff a list of (1) 613,797 cellular telephone numbers with a California area code; (2) which PRA obtained via skip-tracing; and (3) which PRA called between January 1, 2007 to March 31, 2011. (Preston Decl. ¶3.) PRA has also admitted that it "has called more than 400 California residents using a telephone number that PRA did not obtain either from a creditor or from the person that uses that cellular telephone number." (*Id*. ¶4.)  The Plaintiff contends that each of these numbers corresponds to a class member.  Alternatively, PRA argues that it cannot determine whether the 613,797 telephone numbers in the list it provided Meyer "belong to California residents, but . . . only that these individuals have a cell phone with a California area code and that the number was obtained through skip tracing." (*Id*. ¶3.) There does not appear to be a dispute regarding whether the proposed class is sufficiently numerous to satisfy Rule 23(a)(1).

### *b. Commonality*

In order to meet the commonality requirement of 23(a)(2), the Plaintiff must establish that there are questions of law or fact common to the class as a whole. Rule 23(a)(2) does not require that all members of the class be identically situated; the requirement is met so long as there are substantial questions of law or fact common to all. *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 914 (9th Cir.1964).  Plaintiff contends the following issues of law and fact are common to the members of the proposed class: (1) violation of 47 U.S.C. § 227(b)(1)(A)(iii), which is amenable to class certification; (2) PRA obtained the class members telephone numbers in a uniform way via skip-tracing; (3) whether the relevant capabilities of the Avaya Proactive Contact Dialer (or PRA's other predictive dialers) constitute an ATDS.

The PRA argues that whether putative class members consented is the central issue of liability that requires the court to undertake a detailed analysis of each class member's individual circumstances and is a fact-intensive inquiry that does not lend itself to resolution on a class-wide basis. Defendant argues that the commonality requirement cannot be satisfied.

Courts have described the showing required to meet the commonality requirement as "minimal" and "not high." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998); *Mortimore v. F.D.I.C.*, 197 F.R.D. 432, 436 (W.D.Wash.2000). The Court has reviewed the parties arguments and the considerable case law dealing with the issue of consent[5] and its affect on certification of TCPA[6] claims

---

[5] In *Forman v. Data Transfer, Inc.*, *Forman* moved for the certification of a class composed of "all residents and businesses who . . . received unsolicited facsimile advertisements" within a given period. 164 F.R.D. 400, 402 (E.D.Pa.1995). The *Forman* court, in denying class certification, noted that the gravamen of Forman's complaint was not a "common course of conduct" by Data Transfer but "a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute." *Id.* at 404. The Forman court consequently determined that the predominance requirement was not satisfied. *Id.*; *see also Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1169-70 (S.D.Ind.1997) (denying class certification because consent would have to be proven via individual inquiries as to each class member); *Levitt v. Fax.com*, 2007 WL 3169078, at *4-7 (D.Md. May 25, 2007) (same).

In contrast, in *Kavu v. Omnipak Corp.*, *Kavu* moved for the certification of a class composed of "[a]ll persons who received an unsolicited advertisement . . . via facsimile from [Omnipak]" within a given period. 246 F.R.D. 642, 645 (W.D.Wash.2007). The Kavu court, in granting class certification, determined that the question of consent was susceptible to common proof. *Id.* at 647. Importantly, the Kavu court did not disagree with earlier federal district court determinations that individual consent issues could preclude class certification. *Id.* Rather, the *Kavu* court determined that in its case the question of consent presented would not require "individual evidence." *Id.* This was true because Defendant had obtained all of the fax recipients' fax numbers from a single purveyor of such information and because, given this fact, *Kavu* was able to propose a novel, class-wide means of establishing the lack of consent based on arguably applicable federal regulations. *Id.* (citing 47 C.F.R. § 64.1200(a)(3)(ii)(B), which indicates that if a "sender obtains the facsimile number from a [commercial database], the sender must take reasonable steps to verify that the recipient agreed to make the number available for distribution"). The common question in *Kavu* was thus whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there were therefore no questions of individual consent. *Id.; see also Hinman v. M and M Rental Ctr.*, 2008 WL 927910, at *4 (N.D.Ill. Apr. 7, 2008) (granting class certification on similar grounds).

[6] The phrase "prior express consent" has not been defined in the TCPA. However, the FCC has specifically examined and definitively stated how the TCPA's prior express consent exception applies to debt collectors:
> [C]reditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt. We note, however, that where the subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request

and finds that in the instant case, the Plaintiff has not defined the class in such a way as to require an individualized inquiry regarding consent of each member of the class. Rather, class membership can be determined based on objective criteria.  The Plaintiff has limited the class to those cellular telephone numbers that Defendant obtained from a source other than the cell phone owner or third party that assigned or sold the debt.  Because the Defendant obtained these cell phone number via skip-tracing and did not obtain them from either the cell phone owner or third party debt owner or assignee, there is no question of consent and no need for an individualized inquiry.

### *c. Typicality*

Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the claims or defenses of the class. Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Keilholtz*, 268 F.R.D. at 337 (quotation omitted). The purpose of Rule 23(a)(3) is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). The requirement is satisfied where the named plaintiff(s) have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct. *Id.* Plaintiff contends the typicality requirement is met because his claims arise from Defendant's uniform wrongful practice and course of conduct.  Because the Plaintiff has demonstrated that the Defendant engaged in a standardized course of conduct vis-a-vis the class members, and the Plaintiff's alleged injury arises out of that conduct, the Court finds that the typicality requirement has been met.  *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp.2d 802, 806 (N.D. Ill. 2008).

### *d. Adequacy of Representative*

Rule 23 requires that a class be certified only if "representative parties will fairly and adequately protect the interests of the class." The two questions that must be resolved to determine legal adequacy are: (1) does the named plaintiff and his counsel have any conflicts of interest with other class members

---

of ACA International for Clarification and Declaratory Ruling, CG Docket No. 02-278, FCC Docket No. 07-232, ¶ 14, 23 FCC Rcd. 559, 567, 2008 WL 65485, *4 (Jan. 4, 2008), available at http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf ("ACA Declaratory Ruling").

and (2) will the named plaintiff or his counsel prosecute the action vigorously on behalf of the class? *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992).

The Defendant argues that the Plaintiff is not an adequate class representative because Rule 23(a)(4) requires that the named party be able to "fairly and adequately protect the interests of the class." The Defendant contends that a named plaintiff is not an adequate class representative if he has "serious credibility problems" that would shift the fact finder's focus to plaintiff's credibility to the detriment of absent class members.[7] Similarly, if past experience demonstrates that the named plaintiff "lacks the high standard of forthrightness, vigor, dedication, and sincerity," he may not be an adequate class representative. *See Cobb v. Avon Prods, Inc.*, 71 F.R.D. 652, 655 (W.D. Pa. 1976).  Although a prior felony conviction does not necessarily preclude serving as a class representative, prior impeachable convictions or past findings of fraudulent conduct may render the named plaintiff inadequate.[8]  The Defendant argues that the Plaintiff's criminal record, dating back to 1998, includes multiple convictions for deceptive conduct. Defendant also contends that each of these crimes bears on Plaintiff's credibility and character. The Defendant argues that Plaintiff's history of misrepresenting his identity demonstrates that Plaintiff "lacks the high standard of forthrightness, vigor, dedication, and sincerity" to serve as a class representative.

Alternatively, the Plaintiff argues that while he regrets the conduct that led to his convictions in 1998 and 2001,[9] the PRA makes no showing that these convictions actually pose any threat to the class. Furthermore, the Plaintiff argues that since his release in 2003, he has graduated from the University of California at Berkeley in 2009 (while working), and has been self-sufficient since. Adequacy requires the Court consider whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class[.]" *Staton v. Boeing Co.*, 327 F.3d 938, 957-959 (9th Cir. 2003).

---

[7] *CE Design Ltd. v. King Arch. Metals, Inc.*, NO. 10-8050, 2011 U.S. App. LEXIS 5365, at *11, 17-18 (7th Cir. Mar. 18, 2011) (Posner, J.).

[8] *See Ash v. Brunswick Corp.*, 405 F. Supp. 234, 248 (D. Del. 1975) (fraudulent conduct in a prior, unrelated case disqualified party from serving as class representative); *Hall v. Nat'l Recovery Sys.*, No. 96-132- CIV-T-17(c), 1996 U.S. Dist. LEXIS 11992, at *12-14 (M.D. Fla. Aug. 9, 1996) (plaintiff's "multitude of impeachable convictions and prior inconsistent statements" rendered him inadequate).

[9] Meyer was first arrested when he was 21, and his offenses were property and drug-related.

"Character attacks made by opponents to a class certification motion" have "generally not been sympathetically received" unless there is "a showing of a conflict of interest." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986). "A prior conviction is not per se disqualifying. . . . [U]nsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation." *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. 01-21151, 2008 WL 2038047, *4 (N.D. Cal. May 12, 2008). The Court finds no evidence that Meyer's past convictions pose any kind of present conflict with the class. Based upon the foregoing, the Court finds the Plaintiff has satisfied the adequacy requirement.

### 2. Rule 23(b)(2) Requirements

The Plaintiff argues that given the limited purpose of the Injunctive Class, certification is appropriate under Rule 23(b)(2). The Plaintiff has defined the injunctive class as all persons using a cellular telephone number which: (1) PRA did not obtain either from a creditor or from the Injunctive Class member; and (2) has a California area-code; or (3) where PRA's records identify the Injunctive Class member as residing in California. The Plaintiff contends that certification under Rule 23(b)(2) is appropriate where the class action will settle the legality of the behavior at issue with respect to the class as a whole. *See* Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments.

A class may be certified under Rule 23(b)(2) "if 'broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury.' " *LaFlamme v. Carpenters Local*, 212 F.R.D. 448, 456 (N.D.N.Y.2003); *see also Thomas v. Baca*, 231 F.R.D. 397, 403 (C.D. Cal.2005). Class certification under Rule 23(b)(2) requires that the defendant acts "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court finds that preliminary certification of the class under Rule 23(b)(2) is proper for at least two reasons. First, the TCPA provides for injunctive relief and the Plaintiff seeks injunctive relief in his complaint. Second, the injunctive relief sought applies generally to the class as the Plaintiff seeks an order from the Court restraining PRA from violating the TCPA by using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with a California area code obtained via skip-tracing.

Based upon the foregoing, Plaintiff's motion for provisional class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) for the limited purpose of obtaining the preliminary injunction is hereby GRANTED. The Court hereby provisionally certifies, for the purposes of the preliminary injunction, Plaintiff's proposed class consists of all persons using a cellular telephone number which (1) PRA did not obtain either from a creditor or from the Injunctive Class member; and (2) has a California area-code; or (3) where PRA's records identify the Injunctive Class member as residing in California ("Injunctive Class").

### *B. Preliminary Injunction*

In determining whether to grant a preliminary injunction, the Court applies the standard articulated in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008). A party seeking a preliminary injunction must demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the moving parties' favor; and (4) that an injunction is in the public interest. *Id.* at 374. There is a sliding scale with regard to these factors and a movant may demonstrate "either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests, but rather outer reaches of a single continuum." *Id.* Assuming a likelihood of success and the public interest favor the plaintiff, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

### *1. Likelihood of Success on the Merits*

The three elements needed to state a TCPA claim are (1) the defendant's called a cellular telephone number, (2) using an automatic telephone dialing system, (3) without the recipient's express prior consent. With regard to the first element, it is clear from the record that PRA called Plaintiff's cellular telephone on September 1, 2010, November 4, 2010, December 14, 2010, and January 4, 2011. (Meyer Decl. ¶3-7.) PRA has admitted to making these calls. (Preston Decl. ¶4.) The Plaintiff has also

provided: (1) a list of 613,797 cellular telephone numbers with a California area code; (2) which PRA obtained via skip-tracing; and (3) which PRA called between January 1, 2007 to March 31, 2011. (Preston Decl. ¶3.) PRA has also admitted that it "has called more than 400 California residents using a telephone number that PRA did not obtain either from a creditor or from the person that uses that cellular telephone number."(*Id.* at ¶4.)

With respect to the second element, the Plaintiff must demonstrate that the call was made using any automatic telephone dialing system or an artificial or prerecorded voice. Plaintiff states that on information and belief that "PRA placed the September 1, November 4, and December 14 calls using an autodialer, i.e., no human manually entered Meyer's cellular telephone number, rather, PRA's telephone system electronically dialed Meyer's cellular telephone when it placed those calls. PRA's telephone system is capable of storing, producing, and dialing any telephone number, and is capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. PRA's telephone system otherwise constitutes an 'automatic telephone dialing system' under the meaning of 47 U.S.C. § 227(a)(1)." Compl. at ¶ 19. PRA does not dispute that the Plaintiff was called using its Avaya Proactive Contact Dialer, PRA argues only that the Avaya Proactive Contact Dialer is not an ATDS within the of the TCPA. However, based upon the legislative history of the TCPA, Congress was attempting to alleviate a particular problem–an increasing number of automated and prerecorded calls to certain categories of numbers.[10] To that effect, the legislative history indicates Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies to ensure that the prohibition on autodialed calls not be circumvented by changing technologies. *Id., see also* 47 U.S.C. § 227(a)(1).

With respect to the third element, the defendant bears the burden of proof with respect to "prior express consent."[11] In support of this claim, the Plaintiff has demonstrated that he did not provide his

---

[10] In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, ¶ 132 and 133, CG Docket No. 02-278, (July 03, 2003).

[11] *U.S. v. First City Nat. Bank of Houston*, 386 U.S. 361, 366, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) (where one claims the benefit of an exception to the prohibition of a statute, that party carries the burden of proof); *see also* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, FCC 07-232, CG Docket No. 02-278 (Dec. 28, 2007) ("To ensure that creditors and debt collectors call only

cellular telephone number to PRA or authorize PRA, or any of the creditors whose accounts PRA seeks to collect, to call his cellular telephone number. (Meyer Decl. at ¶3.)  PRA obtained Plaintiff's cellular telephone number through skip-tracing and Plaintiff's number appeared on the list of 613,797 cellular telephone numbers with a California area code that PRA obtained via skip-tracing. (Preston Decl. at ¶3.)

PRA has expressly admitted that it "has called more than 400 California residents using a telephone number that PRA did not obtain either from a creditor or from the person that uses that cellular telephone number." (*Id*. ¶4.) This admission leaves no doubt that PRA did not have consent to call these numbers; "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." ACA Declaratory Ruling, ¶ 10, 23 FCC Rcd. at 565, 2008 WL 65485 at *3.

Based upon the foregoing, the Court finds that the Plaintiff has demonstrated a likelihood of success on the merits.[12]

### *2. Irreparable Harm*

This is a case in which an injunction is expressly authorized by statute. Generally, a party seeking a preliminary injunction must meet the standard requirements for equitable relief, however, the Ninth Circuit has not required a showing of irreparable harm when an injunction is sought to prevent the violation of a federal statute where that statute specifically provides for injunctive relief.[13] The party

---

those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.")

[12] Even if the Plaintiff had not established a substantial likelihood of success on the merits, other circuits held that if the party seeking the preliminary injunction can establish the last three factors . . ., then the first factor becomes less strict. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246-47 (10th Cir.2001)(quoting *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1994 (10th Cir.1999)).  Instead of showing a substantial likelihood of success, the party need only prove that there are 'questions going to the merits . . . so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Id.*

[13] *Burlington Northern R. Co. v. Department of Revenue of State of  Burlington Northern R. Co. v. Department of Revenue of State of Wash.,* 934 F.2d 1064, 1074 (9th Cir. 1991); *See U.S. v. Estate Preservation Services*, 202 F.3d 1093, 1098 (9th Cir.2000) (citing *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 896 (9th Cir.1983), *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983)); *Atchison, Topeka and Santa Fe Railway v. Lennen*, 640 F.2d 255, 259-61 (10th Cir.1981);

requesting an injunction, must demonstrate that the statutory conditions have been met and must demonstrate a likelihood of future violations before an injunction will issue.[14] The Court finds that the Plaintiff has adequately demonstrated the statutory requirements have been met as set forth in the previous section.

A district court cannot issue an injunction unless "there exists some cognizable danger of recurrent violation." *Id.* The determination that such danger exists must "be based on appropriate findings supported by the record." *Federal Election Comm'n v. Furgatch*, 869 F.2d 1256, 1263 (9th Cir.1989); Fed. R. Civ. P. 65(d). Factors that a district court may consider in making this finding include: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and (5) the sincerity of any assurances against future violations. *Federal Election Com'n v. Furgatch*, 869 F.2d 1256, 1263, n. 5 (9th Cir. 1989).

In the instant case the Plaintiff has provided: (1) a list of 613,797 cellular telephone numbers with a California area code; (2) which PRA obtained via skip-tracing; and (3) which PRA called between January 1, 2007 to March 31, 2011. (Preston Decl. ¶3.) PRA has also admitted that it "has called more than 400 California residents using a telephone number that PRA did not obtain either from a creditor or from the person that uses that cellular telephone number."(*Id.* ¶4.)

Plaintiff argues that the PRA's Do Not Call policies and its securities filings show that PRA knows that calling cellular telephones without permission at least implicates the TCPA. (Doc. No.11-3, ¶¶2, 5.) The Plaintiff further contends that statutory damages have failed to deter PRA. The Plaintiff argues that during the two months after Plaintiff filed this lawsuit, PRA continued to call 46,657 cellular telephone numbers with California area codes without consent demonstrating that the economics of

---

*see United States v. City and County of San Francisco*, 310 U.S. 16, 30-31, 60 S.Ct. 749, 756-57, 84 L.Ed. 1050 (1940).

[14] *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir.1982) ("In an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief." (footnote omitted)), cited in *Minnesota ex rel. Hatch v. Sunbelt Communications and Marketing*, 282 F. Supp.2d 976, 980 n. 2; *see, e.g.*, 42 Am.Jur.2d Injunctions § 23 (2000).

calling cellular telephones without consent outweighs the costs of TCPA liability for PRA. (Parisi Decl. ¶¶2-4.)

The Defendant has stated it is in the business of debt collection and calling cellular telephones to collect such debts is integral to its business.  PRA argues that Plaintiff's requested relief would inflict harm to a legitimate business that seeks to do both economic good and assist debtors in improving their credit standing." (Def.'s Opp. 22.) PRA's underlying contention that the collection of consumer debts justifies its ongoing violation of the TCPA clearly indicates PRA's belief that the potential violations are blameless. A defendant's persistence in claiming that (and acting as if) his conduct is blameless is an important factor in deciding whether future violations are sufficiently likely to warrant an injunction.[15] From this, the Court infers that PRA would continue to violate the TCPA if an injunction is not issued.[16]

*3. Balance of Equities*

PRA argues that an injunction is not appropriate because the harm will fall disproportionately on it, effectively putting it out of business. The plea to remain in business while blatantly violating a federal statute is not persuasive to this Court. Defendants have offered no justification for why they are entitled to profit in the interim, unencumbered by competition that is now undoubtedly suppressed due to the existence of a clear federal statute prohibiting their business practice. Defendants will not be heard to complain that they will be irreparably harmed by enforcement of a valid statute.[17]

---

[15] *See CFTC v. CO Petro Marketing Group, Inc.*, 680 F.2d 573, 582 n. 16 (9th Cir.1982); *SEC v. Murphy*, 626 F.2d at 655; *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972) ("The fact that the appellants continued to maintain that their past conduct was blameless was a factor appropriately considered by the district court in assessing the need for an injunction.").

[16] The Court is also not moved by PRA's contention that its "voluntary cessation" renders "Plaintiff's motion for a preliminary injunction functionally moot." (Def.'s Opp. 2.) The Ninth Circuit has squarely rejected the proposition that any defendant can moot a preliminary injunction by simply representing to the court that it will cease its wrongdoing. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1154 (9th Cir. 2006). "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *EEOC v. Federal Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2009) (citation omitted).

[17] *See Minnesota ex rel. Hatch v. Sunbelt Communications and Marketing*, 282 F.Supp.2d 976, 978 (D. Minn. 2002) citing *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F.Supp.2d 1016, 1028 (D. Minn.2000) (stating company "may not legitimately claim economic harm when a court merely prohibits it from continuing to engage in conduct that violates federal law").

*4. Public Interest*

The final factor requires the Court to determine whether an injunction would be adverse to public interest. The Court finds there is a strong public interest against abusive and invasive practices by the debt collection industry, and the public interest is best served by the enforcement of these regulations whose primary purpose is to protect consumers.

The Court finds that the Plaintiff has demonstrated that the four factors weigh in favor of this Court granting Plaintiff's motion for preliminary injunction on behalf of the provisional class restraining PRA from using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with a California area code, which numbers PRA obtained via skip-tracing, and therefore Plaintiff's motion for preliminary injunction is GRANTED.

**II.    Motion to Stay on Primary Jurisdiction Grounds**

Defendant moves the Court to stay this case under the doctrine of primary jurisdiction arguing the Complaint raises issues currently under consideration by the FCC.[18]  The primary jurisdiction doctrine is applicable only if a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008) (quoting *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir.2002). This doctrine is not designed to allow courts to acquire expert advice from agencies whenever it is presented with an issue that is within the agency's scope of expertise. *Id.* Although there is no fixed formula as to when the primary jurisdiction doctrine applies, the 9th Circuit has instructed courts to invoke the doctrine where there is: (1) a need to resolve an issue that

---

[18] Defendant requests the Court take judicial notice of fifteen documents. Defendant correctly asserts that judicial notice of documents (1) through (15) is appropriate under Federal Rule of Evidence 201(b) because the documents are of public record and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Moreover, courts regularly take judicial notice of documents such as these, which are documents that are administered by or publicly filed with the administrative agency. *See N. W. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1026–27 (9th Cir.2008) (taking judicial notice of contents of EPA's request for public comment); *Moore v. Verizon Commc'ns*, Inc., 2010 WL 3619877 *3 (N.D.Cal.2010) (taking judicial notice of published decisions, orders, and policy statements of the FCC); *Green v. T–Mobile USA, Inc.*, 2008 WL 351017 at *2 (W.D.Wa.2008) (taking judicial notice of comments and petitions filed with the FCC). Additionally, documents (4) and (5) are appropriate because a court may take "judicial notice of the legislative histories of statutes." *Rocky Mtn. Farmers Union v. Goldstene*, 719 F.Supp.2d 1170, 1186 (E.D.Cal.2010).The Plaintiff has not opposed Defendant's request or disputed the authenticity of these documents. Accordingly, the Court grants Defendant's request for judicial notice as to these documents.

(2) Congress placed within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. *Id.* at 1115.

Defendant asserts the primary jurisdiction doctrine applies to the case at bar, compelling the Court to stay or dismiss this action pending review by the Federal Communications Commission ("FCC") of issues addressed in its January 22, 2010 Notice of Proposed Rulemaking ("NPRM"). In the NPRM, the FCC announced that it is considering revising its TCPA rules to require companies to obtain express written consent from the called party prior to placing automated, pre-recorded calls. [Doc. No. 14 (citing Defendant's Request for Judicial Notice ("RJN"), [Doc. No. 14-2.] Defendant argues that the NPRM will require the FCC to clarify other issues that do impact this case, specifically, whether the TCPA's restrictions apply to debt collectors and, if so, whether the automatic dialing equipment used by debt collectors falls within the statutory definition of automatic telephone dialing system. [Doc. No. 14, pg. 2.] Because Defendant is a debt collector whom Plaintiff alleges used an automatic dialing system in violation of the TCPA, Defendant argues that adjudication of Plaintiff's claims would undermine the FCC's authority and decision making in this area. However, the issues currently before the FCC are not relevant to this action, much less dispositive of Plaintiff's claims. The FCC has already issued a declaratory ruling stating debt collectors who make autodialed or prerecorded calls to a wireless number are responsible for any violation of the TCPA.[19] *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd 559 (2008), at ¶¶ 10 & 14.

Based upon the foregoing, the Defendants' motion to stay is hereby DENIED because the FCC has already ruled on the issue before this Court so it is not one of first impression and therefore does not implicate the FCC's authority to interpret the TCPA.

---

[19] *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd 559 (2008), at ¶¶ 10 & 14. The FCC has already ruled that: 1) the TCPA applies to debt collectors; 2) the definition of "automatic telephone dialing system" includes "predictive dialers"; 3) predictive dialers used by debt collectors fall within the meaning of autodialers, thereby refusing to carve out an exception for debt collectors; and 4) with regard to prior consent, it is the creditor's burden to show the wireless number was provided by the consumer to the creditor during the transaction that resulted in the debt owed. *See id.*

## *Conclusion*

For the reasons set forth below, the motion for preliminary injunction and conditional class certification, [Doc. No. 11], is hereby GRANTED as set forth above and the motion to stay, [Doc. No. 14], is hereby DENIED.

The Court hereby orders, PENDING TRIAL OF THIS ACTION, that defendant IS HEREBY RESTRAINED AND ENJOINED from using its Avaya Proactive Contact Dialer to place calls to cellular telephone numbers with a California area code that PRA obtained via skip-tracing. The above Preliminary Injunction is effective on the filing of this order.

Since PRA has failed to: 1) suggest what amount of bond would be sufficient; or 2) provided any evidence of their alleged economic loss; despite PRA's obligation to do so, the Court defers to Plaintiff's proposed amount of $2000 for the bond, but grants PRA leave to file a motion to adjust the amount of bond. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003); *Pacific Rollforming, LLC v. Trakloc Int'l, LLC*, No. 07-1897, 2007 WL 3333122 at *3 (S.D. Cal. Nov. 7, 2007).  PRA shall file any such motion *on or before September 23, 2011*.  Plaintiff shall file their response *on or before October 7, 2011*, and Defendant's reply shall be due *on or before October 14, 2011*.  Defendant shall contact the law clerk to obtain a hearing date for the motion prior to filing.

IT IS SO ORDERED.

DATED: September 14, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge